In Re: Appeal of Chester Upland School District From Award ofArbitrator.

Chester Upland School District, Delaware County, Pennsylvania, Appellant.

Argued October 8, 1980, before Judges CRAIG, MAC-PHAIL and WILLIAMS, JR., sitting as a panel of three.

*Leo A. Hackett, Fronefield and DeFuria,* for appellant.

*Alexander A. DiSanti, Richard, Brian, DiSanti & Hamilton,* for appellee.

OPINION BY JUDGE CRAIG, December 4, 1980:

The Chester Upland School District (district) appeals from the order of the Court of Common Pleas of Delaware County which affirmed an arbitrator's decision in favor of certain professional employees within the bargaining unit represented by the Chester Upland Education Association (association).

The unit represented by the association includes, in addition to classroom teachers, other professional employees such as deans, guidance counsellors, health services employees and the like, all of whom are compensated by 26 biweekly salary payments.

The relevant collective bargaining agreement (agreement) treats teaching employees as "Ten (10)-month personnel," and specifies their work year as being 184 days. The agreement is silent with respect to the required work year of non-teaching employees within the unit such as those enumerated above; these latter employees, generally denominated 12-month employees, have an admittedly longer work year than teaching employees.

From 1963 until 1969, all year-round employees (professional and non-professional) of the district were required to work the equivalent of 24 pay periods (48 weeks), pursuant to a district board resolution allowing such employees four weeks of vacation.

In 1969, however, by informal action of the then President of the district board, in negotiations with certain 12-month professional employees, the latter's work year was in fact reduced to 23 biweekly periods (46 weeks) by way of allowing those employees an additional 2 weeks vacation, to make a total of 6 weeks. The record indicates that the work year reduction was negotiated as an alternative to a wage increase.

From 1969 until the action precipitating this litigation, 12-month professional employees were in fact required to work only 23 biweekly periods; they were permitted, with the approval of the district superintendant, to take up to 30 days (6 weeks) vacation upon request, as is evidenced by notations within the employees' personnel records kept by the director of personnel and curriculum.

During the 1976-77 school year, the district board reviewed past board minutes and failed to discover any formal board action comporting with the existing practice of 46 weeks work/6 weeks vacation.

In September 1977, at the direction of the board president, the superintendant issued a memorandum advising 12-month professional employees that the "official" policy of only 20 days (4 weeks) vacation would be followed, effective with the 1977-78 school year. That memorandum, however, expressly recognized that the existing practice was to allow 30 days vacation and therefore to require only 46 weeks of work, in that it recited, in part:

CURRENT VACATION STATUS

Vacation time earned during 1976-1977 (30 Days) will be taken between July 1, 1977 and June 30, 1978.

Vacation time earned for 1977-78 (20 Days) will be taken during the period July 1, 1978 to June 30, 1979.

In October 1977, the association filed a grievance against the district, alleging that the district was improperly depriving the 12-month professional employees of their rightful 6-week vacations; confronted with the district's response that the matter was not grievable, the association presented it to arbitration.

In arbitration, the district contended, first, that because the issue of vacation for 12-month professional employees was nowhere addressed in the agreement, the matter was not arbitrable; second, assuming the arbitrability of the issue, the district argued that the principle of past practices was not applicable.

The arbitrator decided against the district in both respects, concluding that the district had violated the agreement by reducing the allowed vacation period. The common pleas court affirmed the arbitrator, and this appeal followed.

Here, the district raises the same issues as it did before the arbitrator and the trial court; we address them in the order above stated.

With respect to the threshold question of arbitrability, we are guided by *County of Allegheny v. Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 381 A.2d 849 (1977):

> As this Court noted in Board of Education of Philadelphia v. Federation of Teachers Local No. 3, 464 Pa. 92, 99, 346 A.2d 35, 39 (1975), Pennsylvania labor policy not only favors but requires the submission to arbitration of public employee grievances 'arising out of the interpretation of the provisions of a collective bargaining agreement'. [Citation omitted.] From this policy is derived the corollary principle that where, as here, an arbitrator has interpreted a collective bargaining agreement in favor of the arbitrability of the grievance before him, a re-

viewing court should be slow indeed to disagree. As the Supreme Court of the United States observed in *United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 584-85, 80 S.Ct. 1347, 1354, 4 L.Ed. 2d 1409 (1960):

> 'In the absence of any *express* provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad.' (Emphasis added).

*supra* at 31-2, 381 A.2d at 851 (footnotes omitted).

We find no error in the decision here that the issue was arbitrable. The definition of grievance in the agreement,[1] as a "complaint" in accordance with procedures and forms, is broad and is expressed in language which is procedural rather than substantive; neither the procedures nor the forms contain any subject matter limitation. The grievance procedure purpose is stated as being to secure equitable solutions to "the problems which may from time to time arise"—broad language indeed. The arbitration provisions of the agreement, by their language, extend to any dispute subject to grievance procedures in the first instance. Further, there is no express exclusion of this controversy from grievance and arbitration channels, although the parties did, in Article X, expressly exclude some topics, unrelated to this litigation, from those channels.

---

[1] III-A(1) Grievance

A 'grievance' is a complaint between a teacher and/or the Association and the School District in accordance with the procedures and Grievance Report forms incorporated herein as within this Article.

The district's argument based on the absence of express reference in the agreement to the issue of vacation for 12-month employees is offset by the association's dependence upon the inclusiveness of clauses IV-C and IV-D in the agreement.[2] Although the second sentence of clause IV-C might reasonably be interpreted to refer only to rights granted by statute, such an interpretation would make the sentence mere surplusage; in any event, that interpretation is certainly no more reasonable than that advanced by the association, and adopted by the arbitrator, that such language was intended to preserve other existing rights not enumerated in the agreement.

Accordingly, we will not disturb the arbitrator's threshold decision. *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 597-8, 375 A.2d 1267, 1277 (1977). We note that few matters could be more centrally related to the interpretation of a collective bargaining agreement than the length of the required work year as an obligation of the employees and the length of their vacations as a benefit complementary thereto.

---

[2] IV-C Statutory Savings Clause

Nothing contained herein shall be construed to deny or restrict to any teacher such rights as he may have under Pennsylvania School laws or other applicable laws and regulations. The rights granted to teachers hereunder shall be deemed to be in addition to those provided elsewhere.

IV-D Discipline—Grievance Procedure

No teacher shall be disciplined, formally reprimanded, reduced in rank or compensation or deprived of any benefits secured herein without justifiable reason. Any such action asserted by the Board, or any agent or representative thereof, shall be subject to the grievance procedure herein set forth. This provision shall not apply to circumstances where the teacher would otherwise have a remedy under the provisions of the Public School Code of 1949, as amended.

108

The final question is thus whether the arbitrator's decision, that the 12-month employees were entitled to 6 weeks of vacation, *i.e.*, were obligated to work only 46 weeks of the year, can be said to have been drawn from the essence of the agreement.³ In view of "other indicia of the parties' intention," *Ludwig Honold, Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3rd Cir. (1969) we hold that the arbitrator's decision was so drawn.

Four situations have been articulated where evidence of past practices can be legitimate indicia of the parties' intention.⁴ This case presents a situation

---

³ The "essence" test, which defines our scope of review of an arbitrator's award, has been reiterated by our Supreme Court:

We said in Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA), 473 Pa. 576, 375 A.2d 1267 (1977), the test is to be as follows:

'To state the matter more precisely, where a task of an arbitrator, PERA or otherwise, has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the Judiciary if "the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention . . ." Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, [at] 1128 (3d Cir. 1969). It was this approach which was meant to be suggested by the brief statement in International Brotherhood of Firemen and Oilers, [v. School Dist. of Philadelphia, 465 Pa. 356, 350 A.2d 804] quoted supra, that "the arbitrator's interpretation of the contract must be upheld if it is a reasonable one." 465 Pa. at 366, 350 A.2d at 809.'

*Ringgold Area School District v. Ringgold Education Association, PSEA/NEA*, 489 Pa. 380, 383-384, 414 A.2d 118, 120 (1980).

⁴ (1) to clarify ambiguous language;
(2) to implement contract language which sets forth only a general rule;

within the fourth category, where evidence of past practice may prove an employment condition which cannot be derived from any express language of the agreement. However, this fundamental question—how many weeks must the employees work to fulfill their obligation—*must* be resolved if the agreement, admittedly applicable to 12-month professional employees, is to have any meaning. Hence, past practice is needed to evidence the essence of the agreement, because without it, a central element of the terms and conditions of employment cannot be ascertained.

The decision that the employees in question are entitled to 6 weeks vacation does not conflict with or disregard any language of the agreement. Further, the agreement here contains no integration clause, so that the fourth category of past practice situations is not foreclosed as in *County of Allegheny, supra,* at 37, 381 A.2d at 854.

The district also asserts that the arbitrator's decision binds the district by the unauthorized action of the former board president, in violation of Section 508 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §5-508 which requires formal board action on specified matters. We find no merit in this contention for several reasons: (1) the record reveals that the matter at hand involves no additional expenditures of money or hiring of personnel, because no substitutes have been hired to replace 12-month employees when on the longer vacation basis; (2) Section 508 has been held to be directory only, *Mullen v. DuBois Area School District,* 436 Pa.

(3) to modify or amend apparently unambiguous language which has arguably been waived by the parties; and

(4) to create or prove a separate, enforceable condition of employment which cannot be derived from the express language of the agreement.

*See: County of Allegheny, supra,* 476 Pa. at 34, 381 A.2d at 852.

110

211, 259 A.2d 877 (1969); and (3) the involvement of the former president, the acquiescence of the district's superintendent and administration for seven years, and the memorialization of the practice in the district's records, makes imputation of knowledge of the practice appropriate.

Accordingly, we affirm the decision appealed.

ORDER

AND Now, this 4th day of December, 1980, the January 30, 1980 order of the Court of Common Pleas of Delaware County, Civil Division, Law, at No. 78-17425, is affirmed.