Northwest Tri-County Intermediate Unit No. 5 Education Association, Appellant *v.* Northwest Tri-County Intermediate Unit No. 5, Appellee.

Argued May 7, 1981, before President Judge CRUMLISH and Judges ROGERS and BLATT, sitting as a panel of three.

*George Levin, Shamp, Levin, Arduini, Jenks & Hain,* for appellant.

*Donald C. Buseck,* with him *Cygne L. Nemir, Quinn, Gent, Buseck and Leemhuis,* for appellee.

OPINION BY JUDGE BLATT, July 30, 1981:

This is an appeal from an order of the Court of Common Pleas of Erie County which vacated an arbitrator's award in a dispute between the Northwest Tri-County Intermediate Unit Number Five (Intermediate Unit) and the bargaining representative of the Intermediate Unit employees (Association).[1] The arbitrator's award was in favor of the Association, and the Association appealed here after the court's vacation of the award.

The Intermediate Unit provides special education services for the students of seventeen school districts in Erie, Crawford and Warren Counties, and its employees are assigned to work at the schools in the various school districts. The labor dispute in question arose during the 1979-80 school year when two of the school districts served by the Intermediate

---

[1] Northwest Tri-County Intermediate Unit No. Five Education Association.

Unit suffered a work stoppage by school district employees.[2] The ten employees of the Intermediate Unit who were assigned to the striking school districts reported to work at the offices of the Intermediate Unit and requested that they be given alternative work assignments during the work stoppages. This had been the practice of the Intermediate Unit during school district strikes in previous years. The request was denied by the Intermediate Unit which alleged that the existing collective bargaining agreement required Intermediate Unit employees to observe the work schedules established by the school districts where they were assigned, that the employees should not report to work for the duration of the strike, that they were not entitled to alternative work assignments during the strike, and that, although they would be paid during the strike, they would be expected to work during make-up days without additional compensation.[3]

------

[2] Six professional employees of the Intermediate Unit were assigned to work at the Fairview School District which, on September 14, 1979, suffered a work stoppage leading to a loss of 26 school days. Four professional employees of the Intermediate Unit were assigned to work at the Union City School District which, on September 17, 1979, suffered a work stoppage leading to a loss of 27 school days. The calendars of both school districts were later extended to make up for the lost days.

[3] The collective bargaining agreement provides in pertinent part:

1. TEACHER WORK YEAR

A. The school work year for full-time professional employees, exclusive of professional persons employed in psychological services and home and school visitors, shall consist of 180 instructional days. 1 preparation day, 3 inservice days, 1 closing records and report day not to exceed 185 days at the discretion of the Board. The foregoing may be modified in specific districts by the terms of paragraph B of this Article. Should less than 185 days

The Association filed a grievance which was denied by the Intermediate Unit and which the Association then appealed to arbitration. The arbitrator sustained the Association's grievance on the ground that the prior practice of the Intermediate Unit during work stoppages, which was to reassign its employees and to pay them at the contractual overtime rate for make-up days, was an important indication of how the parties interpreted the pertinent terms of their contract. Noting that the relevant contract provisions had not been altered since the date of the previous strike, he ruled that the collective bargaining agreement entitled the employees to alternative work assignments during the work stoppage, as well as to pay for any make-up days. The court below vacated the award on the grounds that the prior practice of the parties was an impermissible indicia of their intent because the contract itself contained the following integration clause:

The parties agree that all negotiable items have been discussed during the negotiations

be scheduled by paragraph B the employee shall not suffer loss of wages but may be temporarily reassigned.

B. The school calendar adopted by the Board of School Directors in the district where classes are located will be observed by classroom teachers. Itinerant staff personnel will observe the calendar effected in the district where the majority of pupils is served. Adjustments in schedules to be the responsibility of the itinerant specialists.

C. If a teacher is requested to work in excess of 185 days by a written request of the appropriate administrator, he/she shall be reimbursed on a per diem basis at one and one-half time times the daily rate. The teacher has the option of refusing the opportunity for additional work.

D. The school work year for 185 day professional employees shall begin no earlier than one week before the earliest day for which teachers are required to attend in any constituent school district within the Intermediate Unit.

leading to the agreement, and that no additional negotiations on this agreement will be conducted on any item, whether contained herein or not, during the life of this agreement.

The central issue here is whether or not the arbitrator, in relying on the past practice of the parties despite the existence of the integration clause in the contract, failed to draw his award from the essence of the contract. *Leechburg Area School District v. Dale,* Pa. , 424 A.2d 1309 (1981).

The Intermediate Unit argues that, in formulating the collective bargaining agreement, the parties operated from positions of similar bargaining strength and, therefore, that the integration clause of the agreement should be literally applied. It contends that, if the clause operates to the displeasure of one party in one set of facts, it may just as well operate to the displeasure of the other party in another set of facts. The Association, on the other hand, makes the compelling argument that, by undertaking a strict contract analysis so as to allow a boilerplate integration clause to divest the arbitrator of authority to consider past practices, the court below defeats the policy of encouraging arbitrators to draw upon their knowledge of "the law of the shop" to settle disputes. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593 (1960).

The leading case in Pennsylvania concerning the effect of a contractual integration clause upon the arbitrator's discretion to consider past practices as evidence of the parties' intent is *County of Allegheny v. Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 381 A.2d 849 (1977). There, the Supreme Court gave strict effect to the integration clause, holding that the arbitrator improperly considered the employer's past practice of providing guards for the prison employees during their lunch

hour when this practice was not incorporated into the parties' new contract containing a broad integration clause. Justice POMEROY wrote for the majority:

> [W]e hold only that where a collective bargaining agreement not only makes no mention whatever of past practices but does include a broad integration clause, an award which incorporates into the agreement, as separately enforceable conditions of the employment relationship, past practices *which antedate the effective date of that agreement* cannot be said to 'draw its essence from the collective bargaining' agreement. (Emphasis added, footnote deleted.)

*County of Allegheny v. Allegheny County Prison Employees Independent Union, supra* at 38, 381 A.2d at 854. *See also Ringgold Area School District v. Ringgold Education Association,* 489 Pa. 380, 414 A.2d 118 (1980); *Appeal of Chester Upland School District,* 55 Pa. Commonwealth Ct. 102, 423 A.2d 437 (1980).

The past practice considered by the arbitrator in the present case, we believe, clearly falls within the Supreme Court's exception to its general rule, for the past practices relied upon by the arbitrator occurred after the effective date of the bargaining agreement.[4] The arbitrator was therefore correct in considering the parties' past practice during strikes as an aid in interpreting their contract. The Supreme Court recognized the admissibility of such evidence of past practices when it stated in *County of Allegheny v. Allegheny County Prison Employees Independent Union, supra* at 39, 381 A.2d at 855:

> Nor do we intend to say that an arbitrator's reliance on past practices to clarify ambiguous language in the collective bargaining

---

[4] The effective dates of the contract at issue were July 1, 1977 to July 31, 1980.

agreement, to implement general contract language or to show that a specific provision in the contract has been waived by the parties, would be improper although the agreement in question included an integration clause.

Finally, the lower court also erred in concluding that the previous strikes were not of sufficient longevity or repetition to establish the existence of a prior practice. The labor arbitrator, however, is the sole judge of factual questions in an arbitration proceeding, *Leechburg Area School District v. Dale, supra,* and, because we have concluded as a matter of law that the arbitrator could properly consider the instances of past practice in interpreting the contract, and because the similarity of the strikes is a factual question, the evidentiary weight to be afforded those past practices is a matter within the arbitrator's sole discretion.

We will therefore reverse the Order of the lower Court.

### ORDER

AND Now, this 30th day of July, 1981, the order of the Court of Common Pleas of Erie County in the above-captioned case is hereby reversed and the award of the labor arbitrator is reinstated.