**DEPARTMENT OF CORRECTIONS,**
Petitioner

v.

**PENNSYLVANIA STATE CORRECTIONS OFFICERS ASSOCIATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 7, 2011.
Decided Dec. 21, 2011.

---

Keith A. Herbster, Harrisburg, for petitioner.

Sean T. Welby, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.[1]

The Commonwealth of Pennsylvania, Department of Corrections (Department) petitions for review of a grievance arbitration award issued under the Public Employe Relations Act (Act 195).[2] The award designated those positions at state correctional institutions that, upon vacancy, will be filled by bid of corrections officers and not by choice of management. The Department challenges that portion of the award that grandfathered the bid post designations that had been made under 1988 contractual language that was later repealed. The Department asserts that this portion of the grievance arbitration award fails to draw its essence from the 2008–2011 Collective Bargaining Agreement. Concluding that the challenged portion of the award cannot be reconciled with the 2008–2011 Collective Bargaining Agreement, we vacate and remand.

## Background

A "bid post" is a job position at a state correctional institution that is filled according to the seniority of the corrections officers who bid on the position when it becomes vacant. Stated otherwise, the position is filled by choice of corrections officers and not by management. Generally, a bid post is considered a desirable posi-

---

1. The case was reassigned to this author on July 19, 2011.

2. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

tion because it involves less contact with inmates and more regular hours. The designation of bid posts has been a long-standing point of friction between the employees and management. The Department seeks to preserve its management prerogative by limiting the number of bid post positions, and the corrections officers seek, logically enough, the opposite.

In 1988, the Department and the American Federation of State, County and Municipal Employees (AFSCME), which represented employees at state correctional institutions at that time, addressed the bid post designation issue in two "side letters" that amended the parties' collective bargaining agreement. The January 1988 side letter defined "bid posts" as:

> [P]osts which are desirable because they involve considerably reduced and/or limited inmate contact and control and, consequently, involve less of the demands normally associated with exercising care, custody and/or control over inmates for an eight hour shift. Additionally, the work hours and/or days of such positions may be those typically considered as premium (*i.e.* 8:00 a.m. to 4:00 p.m., Monday through Friday), but not necessarily operated on those hours and/or days.

Reproduced Record at 997a (R.R. \_\_\_\_). In September 1988, a second side letter between the Department and AFSCME expanded the criteria to be used to designate bid posts. The September 1988 side letter stated:

> Whenever agreement is reached between the local Union and Management, posts shall be designated as bid posts. *The basis of such agreement may be either the definition* outlined in # 1 of the January 21, 1988, side letter *or some other relevant factor(s).*

R.R. 1001a (emphasis added). Using these side letters, local union representatives and local management designated certain job positions as bid post positions at their particular institution. There was no consistency in these bid post designations. For example, the position of transport officer could be a bid post at one institution and non-bid post at another, even though the job responsibilities were identical. This was because the parties could make the designation *either* by using the 1988 contractual definition of bid post *or* by using other "relevant factors."

In 2001, the Pennsylvania State Corrections Officers Association (Association) replaced AFSCME as bargaining agent for corrections officers and other state correctional employees. Interest arbitration established the parties' collective bargaining agreement for the period July 1, 2005, to June 30, 2008. Article 33, Section 18 of that agreement directed the 1988 side letters to remain in effect while the parties created a joint committee to address "the definition of bid posts and increasing the number of bid posts." Act 195 Interest Arbitration Award (2005–2008 Collective Bargaining Agreement), Article 33, Section 18; R.R. 345a. A committee was formed, but it could not develop a comprehensive definition of bid post before the expiration of the 2005–2008 agreement.

When the parties were unsuccessful in negotiating a post–2008 collective bargaining agreement, they proceeded to interest arbitration, which established the terms of a collective bargaining agreement for the period July 1, 2008, to June 30, 2011. The interest arbitration award extended all provisions of the 2005–2008 Collective Bargaining Agreement not explicitly modified by the interest arbitration. Act 195 Interest Arbitration Award (2008–2011 Collective Bargaining Agreement) at 15; R.R. 609a.

One of the provisions modified by the interest arbitration award was that relat-

ing to bid posts. The award repealed Article 33, Section 18 of the 2005–2008 Collective Bargaining Agreement and the 1988 side letters. In its place, Section 8 of the 2008–2011 Collective Bargaining Agreement defined bid posts and mandated a procedure for resolving any disagreements about the application of the definition. Section 8 states, in relevant part, as follows:

**Bid Posts**

Replace Article 33, Section 18, and the sideletters dated January 21, 1988 and September 28, 1988, regarding bid posts with a new Article in the agreement, as follows:

1. A Bid Post is a Corrections Officer post that is desirable because it involves considerably reduced and/or limited inmate contact and control and, consequently, involves less of the demands normally associated with exercising care, custody and/or control over inmates for an eight hour shift. Additionally, the work hours and/or days of such positions may be those typically considered as premium (*i.e.* 8:00 a.m. to 4:00 p.m., Monday through Friday), but not necessarily operated on those hours and/or days.

\*　　\*　　\*

7. *Existing positions satisfying the above criteria shall be mutually identified in writing by the parties at each institution within three months of this Award.* Disputes regarding the application *of this criteria* shall be resolved by direct reference to the grievance and arbitration process set forth in Article 35 of this collective bargaining agreement. *There shall be one state-wide grievance and arbitration proceeding to resolve all open issues regarding bid posts and existing positions.*

\*　　\*　　\*

9. Notwithstanding any provision of this article, any Restricted Housing Unit post shall not be considered a Bid Post. *The agreed upon designation of Control Center posts in effect as of the date of this Award shall be maintained in effect.* Any institution without an agreement on the Control Center post shall resolve that issue in accordance with the provisions found in paragraph seven (7).

*This article will supersede the January 21, 1988 and September 28, 1988 sideletters on Bid Posts.*

2008–2011 Collective Bargaining Agreement, Section 8; R.R. 602a–603a (emphasis added).

The Section 8 definition of bid post controlled the designation of all bid post positions in all correctional institutions, with two exceptions. First, the Restricted Housing Unit position was designated as a non-bid post position at every institution. Second, the Control Center position retained whatever bid post designation it had at a particular prison on the day the interest arbitration award was decided. Stated otherwise, the pre–2008 designations of Control Center positions were grandfathered. All other positions had to be designated using the definition of bid post and the procedures set forth in Section 8.

The 2008–2011 Collective Bargaining Agreement directed the parties to submit, in writing, within three months of the award, their agreement for each position at each institution that satisfied *the criteria found in paragraph 1* of Section 8 for a bid post. 2008–2011 Collective Bargaining Agreement, Section 8, ¶ 7; R.R. 603a. If the parties could not do so, they had to resort to one state-wide grievance arbitration proceeding to resolve outstanding bid post designations.

## Grievance Arbitration

The parties were unable to agree on a single bid post designation at a single institution. Accordingly, they submitted to grievance arbitration all bid post designations at every institution.

The grievance arbitrator used the definition in Section 8 of the 2008–2011 Collective Bargaining Agreement to make his bid post designations. In doing so, the arbitrator formulated a three-factor test for assessing whether a particular job position "involves considerably reduced and/or limited inmate contact and control" and, thus, should be designated as a bid post:

(1) the number of inmates with whom an officer on the post has to have "contact" with and have "control" over; (2) the frequency during an eight hour shift that number must be contacted and controlled on the post; and (3) the intensity (otherwise described as the degree of effort) of the contact and control the officer must exert on the post.

Grievance Arbitration Award at 12–13. Applying these factors, the arbitrator designated all bid post positions, institution by institution. Neither party has challenged a single designation made by the arbitrator using his three-part test, which construes the contractual standard.

However, the arbitrator did not use his three-part test in certain instances. Where the local union and local management had designated certain positions as bid posts using the 1988 side letter agreements, the arbitrator grandfathered those designations. The arbitrator explained that he did so even though some of those pre–2008 designations actually conflicted with the definition of bid post set forth in Section 8 of the 2008–2011 Collective Bargaining Agreement. The arbitrator reasoned as follows:

Despite the parties' long-standing disagreements on which posts should be bid and which posts should not, management and the Association at virtually all of the individual institutions have already mutually agree[d] that at least a few positions are bid posts. Ironically, in several of those cases, most egregiously the outside hospital officer and transport officer, *this mutual designation of a bid post is counter to my application of the 2008–201[1] interest award language.*

Nevertheless, on the conviction that institutional management and Association leadership have the experience and local knowledge to know which posts are suitable for bidding because the posts actually require less inmate contact and control than I would think, nothing in this Award shall convert an existing mutually recognized bid post at any institution to a non-bid post. Put differently, I deem all those posts that are now under mutual agreement to be bid to be bid posts.

Grievance Arbitration Award at 27 (emphasis added).

The Department petitioned for review seeking to vacate this portion of the grievance award.

## Appeal

On appeal, the Department contends that the portion of the grievance award grandfathering the bid post designations made under the now repealed 1988 side letter agreements cannot be reconciled with the language of Section 8 of the 2008–2011 Collective Bargaining Agreement. The Department notes that even the grievance arbitrator acknowledged that some of the pre–2008 designations directly conflicted with the definition of bid post in Section 8, as construed by the arbitrator. Accordingly, the Department contends that the

arbitrator failed, impermissibly, to confine his award to the language of Section 8. The Association rejoins that it was perfectly acceptable for the arbitrator to be guided by the past practices of the parties in resolving the dispute over which positions were to be designated as bid posts.

## Standard of Review

■ A reviewing court owes great deference to an arbitration award. *Department of Corrections v. Pennsylvania State Corrections Officers Association*, 923 A.2d 1212, 1217 (Pa.Cmwlth.2007). Under what is known as the "essence test," the award must be upheld if: (1) the issue as properly defined is within the terms of the collective bargaining agreement; and (2) the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. *State System of Higher Education (Cheyney University) v. State College and University Professional Association (PSEA–NEA)*, 560 Pa. 135, 150, 743 A.2d 405, 413 (1999). An arbitrator's award will be vacated only if it "indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *Id.* The test is not whether the reviewing court agrees with the arbitrator's interpretation of the collective bargaining agreement but whether the arbitrator's interpretation and application of the agreement can be reconciled with the language of the agreement.

Here, the parties agree that the first prong of the essence test was satisfied because the issue of bid posts fell within the collective bargaining agreement, as established in the interest arbitration award. The parties disagree on whether the part of the grievance arbitration award that grandfathered bid post designations made under the 1988 side letter agreements was rationally derived from the 2008–2011 Collective Bargaining Agreement.

## Analysis

The Department argues that the arbitrator was required to apply the bid post definition in Section 8 of the 2008–2011 Collective Bargaining Agreement to all positions submitted to him for a determination.[3] By basing his designations on the pre–2008 agreement of the parties, the Department argues that the arbitrator violated Article 35 of the Collective Bargaining Agreement. Article 35 instructs that the "arbitrator shall neither add to, subtract from, nor modify the provisions of this Agreement." R.R. 351a.[4] The 2008–2011 Collective Bargaining Agreement did not allow bid post designations to be based on any criteria, save those in the definition of bid post in Section 8. Those criteria did not include "other relevant factors," as had been the case in the 1988 side letter agreements.

3. The dissent asserts that the parties asked the arbitrator to render a decision only on "generic posts," *i.e.*, those found in every institution. Dissent op. at 984–85. On the contrary, all positions, both generic and institution-specific, at every institution across Pennsylvania were submitted to arbitration. This is clear from the arbitrator's own description of what he did. He stated, under the heading "Institution Specific Posts" in his award, as follows:

I have considered the evidence presented for each such [institution specific] post and

applied the same factor analysis I used in the generic posts above.
Grievance Arbitration Award at 27 (emphasis added). The "same factor analysis" refers to the criteria established in the 2008–2011 Collective Bargaining Agreement. After announcing his determination for the generic and institution-specific posts, the arbitrator then carved out an exception, grandfathering all previously agreed upon bid posts.

4. This provision of the 2005–2008 Collective Bargaining Agreement was not explicitly modified by the award. R.R. 609a.

The Association counters that the grievance arbitration award logically flows from the 2008–2011 Collective Bargaining Agreement. The Association points out that the definition of bid post in Section 8 of the 2008–2011 Collective Bargaining Agreement is nearly identical to the definition found in the January 1988 side letter. Because the parties have been dealing with that definition for two decades and had previously managed to agree on some bid posts, the Association argues that the arbitrator properly looked to the past practice of the parties in interpreting the bid post criteria.

■ Past practice is a tool used to determine the intent of the parties to a collective bargaining agreement. *Danville Area School District v. Danville Area Education Association, PSEA/NEA*, 562 Pa. 238, 249, 754 A.2d 1255, 1260 (2000). This Court explained that a past practice can effectively become one of the "terms and conditions of employment even though not explicitly included in the collective bargaining agreement." *City of Jeannette v. Pennsylvania Labor Relations Boards*, 890 A.2d 1154, 1159 (Pa.Cmwlth.2006). The Pennsylvania Supreme Court has identified four situations where an arbitrator may use evidence of a past practice:

> (1) to clarify ambiguous language; (2) to implement contract language which sets forth only a general rule; (3) to modify or amend apparently unambiguous language which has arguably been waived by the parties; and (4) to create or prove a separate, enforceable condition of employment which cannot be derived from the express language of the agreement.

*County of Allegheny v. Allegheny County Prison Employees Independent Union*, 476 Pa. 27, 34, 381 A.2d 849, 852 (1977).[5] The Supreme Court further explained that in order to create a binding past practice, the parties must have accepted a given course of conduct by regarding it as "the *normal* and *proper* response to the underlying circumstances presented." *Id.* at 34 n. 12, 381 A.2d at 852 n. 12 (emphasis in original).

Past practice is used where the collective bargaining agreement does not specifically address a particular issue. For example, in *In re Appeal of Chester Upland School District*, 55 Pa.Cmwlth. 102, 423 A.2d 437 (1980), the collective bargaining agreement was silent on the number of vacation weeks available to non-teaching employees but for years these employees had received six weeks. When the school district unilaterally reduced their vacation leave to four weeks, the union filed a grievance, which was sustained in arbitration. This Court affirmed because the past practice of six weeks did not "conflict with or disregard any language of the agreement." *Id.* at 441. Further, the collective bargaining agreement did not disallow past practice.

The same result was reached in *Greater Johnstown Area Vocational–Technical School v. Greater Johnstown Area Vocational–Technical Education Association*, 88 Pa.Cmwlth. 141, 489 A.2d 945 (1985). In that case, the school had allowed union representatives to meet with union members during the school day for many years when it unilaterally decided to disallow the practice. The arbitrator sustained the union's grievance based on past practice, noting that the contract was silent on this

5. The Association suggests, without explanation or analysis, that this case involves the first three identified situations. The evidence does not support this contention. The language pertaining to bid posts is unambiguous, specific and has not been waived. If anything, the Association is in reality advocating for the fourth situation.

point. This Court affirmed. Again, we did so because the past practice did not conflict with any language of the collective bargaining agreement, and nothing in the language of the agreement proscribed the use of past practice. *Id.* at 948.

In *County of Allegheny*, 476 Pa. at 29, 381 A.2d at 850, our Supreme Court reversed a grievance award that had relied on past practice. There, the collective bargaining agreement was silent on the issue of mealtime conditions for guards, and the union sought to continue the past practice which had not been "repudiated in the agreement nor [was it] inconsistent with its terms." *Id.* at 36, 381 A.2d at 853. However, the agreement had a "broad integration clause" providing that the written contract expressed the complete agreement of the parties. The Supreme Court disallowed past practice to be read into the agreement, explaining:

> [W]here a collective bargaining agreement not only makes no mention whatever of past practices but does include a broad integration clause, an award which incorporates into the agreement, as separately enforceable conditions of the employment relationship, past practices *which antedate the effective date of that agreement* cannot be said to draw its essence from the collective bargaining agreement.

*Id.* at 38, 381 A.2d at 854 (emphasis added) (internal quotation omitted).

■ In sum, a past practice cannot be used where it is proscribed or conflicts with the language of the current collective bargaining agreement. Here, the express terms of the 2008–2011 Collective Bargaining Agreement barred the use of past practice to make bid post designations.

■ First, the past practice with regard to bid posts was based on the antecedent January 1988 and September 1988 side letter agreements, and they were expressly repealed and replaced with Section 8 of the 2008–2011 Collective Bargaining Agreement. It is true, as the Association points out, that the definition of bid post in Section 8 is largely identical to the definition found in the January 1988 side letter. However, the Association ignores a critical difference. The September 1988 side letter allowed the parties to designate bid posts using *either* the specific criteria *or* "other relevant factors." It is impossible to know whether the pre–2008 designations were based on the specific criteria or some "other relevant factor" that can no longer be considered. By contrast, Section 8 limits the bid post designations to "the above criteria" in the definition. 2008–2011 Collective Bargaining Agreement, Section 8, ¶ 7; R.R. 603a.

Second, the pre–2008 designations were, in the arbitrator's own words, "counter to my application of the 2008–201[1] interest award language." Grievance Arbitration Award at 27. Where the arbitrator orders an award that, by his own admission, conflicts with the contract language, he has violated the longstanding principle that past practice cannot be used where it produces a result that "conflict[s] with or disregard[s] any language of the agreement." *Chester Upland School District*, 423 A.2d at 441.

Third, using past practice violated the mandatory procedures for determining the bid posts. Section 8 required that if the parties could not agree on the application of the bid post criteria, then there was to be "one state-wide grievance and arbitration proceeding" to resolve the disputes. 2008–2011 Collective Bargaining Agreement, Section 8, ¶ 7; R.R. 603a. This statewide grievance arbitration was designed to achieve consistency between the different state correctional institutions. Instead, the challenged portion of the

grievance arbitration award abandoned the criteria in Section 8; used the designation options in the repealed 1988 side letters; and made designations that conflicted with the mandatory criteria. As a result, the award did not effect the desired consistency of designations between prisons but, rather, achieved the opposite.[6]

Fourth, Section 8 identifies two specific exemptions from using the new criteria to establish bid posts. First, a Restricted Housing Unit post could not be designated a bid post. Second, existing designations of Control Center bid posts were to remain in effect and exempted from further evaluation. With respect to all other bid post designations, the parties were to agree in writing on their designation, *after* the date of the award, using the new criteria. Inexplicably, the arbitrator decided to grandfather all bid post designations, in direct violation of the single instance of grandfathering authorized in Section 8. Instead of effecting a nullification of the 1988 side letters, the arbitrator kept them alive where he used past practice.

The dissent asserts that past practice can be employed here and charges that the majority has usurped the arbitrator's job to interpret the Collective Bargaining Agreement.[7] There is nothing to "interpret" here. Section 8 of the 2008–2011 Collective Bargaining Agreement changed the pre–2008 criteria for designating bid posts and established *mandatory* procedures for implementing those criteria. The parties were directed to submit, in writing, their agreement on bid post designations for every position at every institution, using the 2008–2011 criteria. It was the parties' inability to agree that necessitated the grievance arbitration. The majority *accepts* the arbitrator's interpretation and application of the new criteria. Ironically, the arbitrator himself found that the past practices, *i.e.*, the pre–2008 designations, conflicted with his interpretation of the 2008–2011 criteria. In doing so, the arbitrator deviated from the plain language of the 2008–2011 Collective Bargaining Agreement that explicitly abolished all other past practice designations, save for the Control Center position, and mandated a fresh look at all positions.[8] The dissent does not explain how the past practice, other than the Control Center posts, draws its essence from the agreement.

We hold that the grievance arbitration award does not draw its essence from the

**6.** In the grievance proceeding, the Association criticized the pre–2008 bid post designations, which contained "wild disparities and inconsistencies marking those that were the subject of agreement." R.R. 706a. Further, the Association told the arbitrator that the side letters "resulted in an irreconcilable patchwork of local 'Bid Post Agreements' that were worthless in application." R.R. 709a. The Association now advocates in favor of those very preexisting bid post agreements.

**7.** The dissent's reliance on *Penns Manor Area School District v. Penns Manor Area Educational Support Personnel Association*, 953 A.2d 614 (Pa.Cmwlth.2008), is misplaced. There, the collective bargaining agreement stated that the school district was the sole judge of overtime. However, the parties had a longstanding practice of allowing custodians to work overtime at weekend events. Based on this past practice, the Court held that the school district had to continue to offer this overtime to the custodians. *Penns Manor* is distinguishable because the relevant language of the collective bargaining agreement had not changed. By contrast, the 2008–2011 Collective Bargaining Agreement instituted new procedures and new standards for designating the bid post positions that differed from those employed pre–2008.

**8.** Under the dissent's rationale, had the arbitrator designated Restricted Housing Unit positions as bid posts based on past practice, this Court would be forced to affirm that action even though the Collective Bargaining Agreement specifically prohibits classifying those positions as bid posts at any institution.

2008–2011 Collective Bargaining Agreement. There is no way to read Section 8 of the 2008–2011 agreement to mean that all pre–2008 bid post designations were to be grandfathered. To the contrary, only Control Center posts were grandfathered. In this respect, therefore, the grievance arbitration award violates Section 8 of the 2008–2011 Collective Bargaining Agreement.

## Conclusion

For these reasons, the portion of the arbitrator's grievance award regarding "existing mutually recognized bid posts" is vacated. The matter is remanded for the arbitrator to consider whether the previously agreed-upon bid post designations can be continued in light of the criteria set forth in Section 8 of the 2008–2011 Collective Bargaining Agreement.

## ORDER

AND NOW, this 21st day of December, 2011, the portion of the arbitrator's grievance award regarding "existing mutually recognized bid posts" is hereby VACATED. The matter is REMANDED for the arbitrator to decide whether the previously agreed-upon posts should be bid posts or non-bid posts based on the criteria found in the 2008–2011 Collective Bargaining Agreement.

Jurisdiction relinquished.

DISSENTING OPINION BY Judge McGINLEY.

I dissent because I believe the Majority has overstepped its bounds by erroneously engaging in a "merits review" and "substituting its own judgment" for that of the Arbitrator.

It is axiomatic that "[a] court should not engage in merits review" of an arbitration award under the Public Employee Relations Act (PERA). Indeed, "the essence test does not permit an appellate court to intrude into the domain of the arbitrator and determine whether an award is 'manifestly unreasonable.'" *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA,* 595 Pa. 648, 661, 939 A.2d 855, 863 (2007). This Court may not substitute its own judgment for that of the arbitrator even if its interpretation of the CBA might differ from that of the arbitrator. That is precisely what the Majority has done here.

The only question before this Court concerns the second prong of the essence test, i.e., whether the specific portion of the Grievance Award entitled "Existing Mutually Recognized Bid Posts" was rationally derived from the 2008–2011 Interest Arbitration Award.

Before the Arbitrator, DOC had argued that the parties were unable to mutually identify in writing *any* generic[1] position that satisfied the criteria for a "bid post" in the 2008–2011 Interest Arbitration Award. Accordingly, DOC submitted evidence regarding each and every generic post at each and every DOC institution and requested that the Arbitrator examine each and every one.

In response, the Association simply pointed out to the Arbitrator that some posts were "mutually recognized" as bid posts under the 1988 side letter language which was virtually "identical" to the language in the 2008–2011 Interest Arbitration Award with the exception of the "other relevant factors" language.

---

1. A "generic" post is one that exists at all, or almost all, institutions. For example, visiting room officer, sally port sergeant, perimeter patrol officer, search team, strip search officer, and transport officer.

For example, Houtzdale State Correctional Institution has an "activities officer" that works 7:30 a.m. to 3:30 p.m., Monday through Friday. That is considered to be a "bid post" at Houtzdale presumably because of the desirable hours. Somerset State Correctional Institution's (SCI–Somerset) "education lobby officer" works 8:00 a.m. to 4:00 p.m., Monday through Friday. By mutual agreement between the local union and SCI Somerset's management, this post has been considered to be a "bid post" at that particular institution and the position is bid based on seniority again, presumably because of the desirable hours and conditions at that particular institution.

With respect to these long-standing bid-post jobs, the Association noted that "[a]t this point many of them have now been bid for years and even decades. There is no evidence anywhere in the record that the duties and responsibilities of these positions have changed one iota since being declared a Bid Post." Post Hearing Brief of Pennsylvania State Corrections Officers Association, at 18; R.R. at 721a.

In turn, the Arbitrator, relying on the intent of the parties and the manner in which they had in several instances, on the local level, agreed to apply the definition of "bid post," identified what he dubbed to be "Existing Mutually Recognized Bids." The Arbitrator noted that "management and the Association at virtually all of the individual institutions *have already mutually agreed* that at least a few positions are bid posts." Although he did not agree that the "outside hospital officer" and "transport officer" posts met the criteria of a "bid post," he deferred to the experience and local knowledge of the parties and deemed that "*all of those posts that are now under mutual agreement*" remained "bid posts."

The Arbitrator did *not* get into the specifics of the conditions at each institution. Rather, he defined, *generically* the jobs, and determined based on the generic descriptions, whether they should be bid-posts or not. Whenever a particular institution and its local union agreed for whatever reason, that the job was not at issue, the Arbitrator refrained from changing that which was not broken. Rather, he deferred to the local union and local management and perceptively recognized that "they knew best." The Arbitrator understood that some jobs were not up for debate. Those jobs were not at issue.

The Majority concludes that in so doing, the Arbitrator misinterpreted the CBA although this is precisely what this Court has been cautioned not to do. An arbitrator's award must be respected by the judiciary if the interpretation may in any rational way be derived from the CBA, viewed in light of its language, its context and any other indicia of the parties' intention. *Pennsylvania Turnpike Com'n v. Teamsters Local 250*, 988 A.2d 789 (Pa. Cmwlth.2010). A court will only vacate an arbitration award where the award indisputably and genuinely is without foundation, or fails to logically flow from the CBA. *Northwest Area School District v. Northwest Area Education Association*, 954 A.2d 111, 114 (Pa.Cmwlth.2008).

Contrary to the Majority, the Arbitrator's decision regarding "mutually existing bid posts" drew its essence from the parties' interest arbitration award. He was asked to define which of the generic jobs presented to him were bid posts. The Arbitrator did exactly what he was charged to do. DOC submitted to the Arbitrator every "generic" position that was commonly found at most, but not necessarily all, of the local institutions. The Arbitrator analyzed each of those "generic" positions and identified which qualified

as bid posts for the parties to use as a guide on a state-wide basis to determine, in the future, which posts were bid posts.

What the Arbitrator did **not** do, because he was not required to do so under the interest arbitration award, was to disturb or disrupt business at institutions at the local level where no dispute existed regarding which positions were bid posts.

The Association specifically argued before the Arbitrator that certain local institutions and its employees had agreed, for whatever reason, that certain positions were bid posts. The Arbitrator accepted the Association's argument that there were certain jobs at specific institutions that, although they would have been considered to be non-bid posts under his "generic" analysis, were nevertheless, **not alterable by him** because those institutions and unions at the local level had bid them for decades.

The Majority concludes the Arbitrator should have **forced** these particular institutions to change the status of the posts and disrupt operations at the local level where by mutual agreement the posts were bid. However, this conclusion is based on the Majority's own interpretation of the CBA that the Arbitrator was **required** do that. Again, the Arbitrator did exactly what he was charged to do, which was to classify the jobs **from a generic standpoint.** Whether the parties had agreed at a particular institution to bid what the Arbitrator deemed to be a non-bid post was not for him to second guess. He simply pronounced that those positions would remain as bid posts.

By refusing to force a change at the local level when the parties had an established practice, which was satisfactory to all parties, the Arbitrator merely acted within the parameters of the interest arbitration when he refused to disrupt that custom.

The 2008–2011 Interest Arbitration required the Arbitrator to resolve all "open issues" regarding "bid posts." Based on the Award's language, context, and evidence of the parties' intention, the Arbitrator concluded that those posts were not posts that were at issue and therefore they were not subject to unilateral change. The Arbitrator's remedy flowed directly from the 2008–2011 Interest Arbitration Award because it was the long-standing practice and mutual interpretation of the parties themselves which he adopted. *Penns Manor Area School District v. Penns Manor Area,* 953 A.2d 614 (Pa. Cmwlth.2008).

Accordingly, under the essence test, I believe this Court is bound to accept the Arbitrator's interpretation.