IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Corrections : 
Officers Association, : 
              Petitioner : 
               : 
      v. :  No. 380 C.D. 2021
               :  SUBMITTED:  September 20, 2021
Commonwealth of Pennsylvania, : 
Department of Corrections, : 
              Respondent : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                   FILED:  October 15, 2021

Pennsylvania State Corrections Officers Association (PSCOA) petitions for review of the March 15, 2021 Grievance Arbitration Award (Award) issued by Arbitrator Jared N. Kasher (Arbitrator Kasher).  Arbitrator Kasher concluded that the Commonwealth of Pennsylvania, Department of Corrections (DOC) did not violate the terms of its collective bargaining agreement (CBA) with PSCOA when it instructed PSCOA members to not report for work on the June 19, 2020 Juneteenth special holiday, which Governor Tom Wolf had declared the prior day.  For the reasons that follow, we affirm the Award.

## Background

PSCOA is the exclusive bargaining representative for all DOC employees whose positions are within the H-1 bargaining unit, as certified by the Pennsylvania Labor Relations Board pursuant to the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101.2301.

PSCOA and DOC are parties to a CBA that has been in place since 2001.[1] The CBA addresses how changes to staff schedules and operations, as well as time off for regular and special holidays,[2] will be treated. Specifically, the CBA states:

> **Article 6, Section 5.** Work schedules showing the employees' shifts, work days, and hours shall be posted on applicable departmental bulletin boards. *Except for emergencies, changes will be posted two weeks in advance. Where changes are to be made by the Employer for*

---

[1] The grievance at issue here arose under the parties' CBA in effect from July 1, 2017 through June 30, 2020.

[2] "Special holidays" are days for which the Governor grants a partial or full day office closing to employees under his jurisdiction for commemorative or celebratory reasons. Reproduced Record (R.R.) at 39a. The Governor's Office Management Directive 505.7 (Management Directive 505.7), which outlines the personnel policies for Commonwealth employees, provides in pertinent part:

**8.9 Special Holidays**

**(a)** Special holidays may be declared by the Governor for employees under the Governor's jurisdiction. Such special holidays may represent a full day or part of a day.

**(b)** All permanent employees who are required to work on the day on which such holiday hours occur will receive time off pay for all hours worked up to the number of hours in the employee's normal work shift if a full holiday is declared or up to a pro rata share of the normal work shift if a partial holiday is declared. The employer may elect the option of paying the employee's regular hourly rate of pay in lieu of such equivalent time off with pay.

**(c)** Special holidays are office closings.

**(d)** Eligible employees in shifts affected by a special holiday will be treated in accordance with Section 8.10 [of Management Directive 505.7] except as stipulated in subsection (c) and except that employees required to work on a special holiday will receive their appropriate rate of pay for that day and not the premium holiday pay outlined under Section 8.10(l) [of Management Directive 505.7].

*Id.*

2

*other than emergency reasons, or where schedules are to be adopted for new programs, the Employer agrees to meet and discuss with [PSCOA] prior to the implementation of such changes or schedules.*

. . . .

**Article 9, Section 6.** *Whenever the Employer declares a special holiday* or part holiday for all employees under the Employer's jurisdiction, *all permanent employees who are required to work on the day on which such holiday hours occur shall receive time off with pay for all hours worked up to the number of hours in the employee's normal work shift if a full holiday is declared*, or up to a pro rata share of the normal work shift if a partial holiday is declared. The Employer shall have the option of paying the employees their regular hourly rate of pay in lieu of such equivalent time off with pay.

R.R. at 6a-7a (emphasis added).

On June 18, 2020, Governor Wolf declared that June 19, 2020 (Juneteenth), would be a special holiday for employees of Commonwealth agencies under his jurisdiction, which includes all members of PSCOA.[3] As such, all DOC employees represented by PSCOA were entitled to the special holiday, subject to the applicable

---

[3] Governor Wolf's June 18, 2020 declaration, which was distributed via email at 9:20 a.m., stated in pertinent part:

> On June 19, 2019, I proudly signed legislation making June 19, known as Juneteenth, an official annual observance in Pennsylvania. Today, I am hereby designating this Friday, June 19, 2020, as a special holiday for employees in agencies under the Governor's jurisdiction.*
>
> . . . .
>
> * This special holiday will be administered in accordance with the appropriate labor agreements or . . . Management Directive 505.7 . . . .

R.R. at 27a. The Governor's Office sent several subsequent emails to Commonwealth employees that same day, offering guidance and clarification regarding the applicable personnel policies when a special holiday is declared. *See id.* at 200a-02a, 309a-11a.

provisions of the CBA. Governor Wolf's declaration encouraged employees to "celebrate this day safely with the people closest to you or in service of your community." R.R. at 27a.

Thereafter, DOC instructed a number of its employees to take the special holiday off and to not report for work the next day. DOC did not provide two weeks' notice of this schedule change, nor did it meet and discuss the change with PSCOA's members. Consistent with Article 9, Section 6 of the CBA, employees who worked the Juneteenth special holiday were paid their regular hours and given one day off in the future. Employees who did not work on Juneteenth were given the day off with pay.

PSCOA filed a class action grievance on behalf of all H-1 bargaining unit members who were instructed not to work on June 19, 2020, as a result of Governor Wolf's declaration. In its grievance, PSCOA alleged that DOC's grant of a special holiday to certain DOC employees on Juneteenth, without the requisite two weeks' notice or the opportunity to meet and discuss the schedule change with PSCOA, violated the terms of the CBA. PSCOA asserted that DOC unilaterally changed its employees' schedules by instructing them to not report for work, causing them to lose out on future time off with pay. After unsuccessfully resolving the matter through the grievance procedure outlined in the CBA, the parties submitted the grievance to arbitration pursuant to the CBA and Section 903 of PERA, 43 P.S. § 1101.903.[4]

---

[4] Section 903 of PERA states in relevant part:

Arbitration of disputes or grievances arising out of the interpretation of the provisions of a [CBA] is mandatory. The procedure to be adopted is a proper subject of bargaining with the proviso that the final step shall provide for a binding decision by an arbitrator or a tri-partite board of arbitrators as the parties may agree.

43 P.S. § 1101.903.

On January 13, 2021, Arbitrator Kasher held an arbitration hearing on the grievance. At the hearing, PSCOA presented evidence that DOC did not provide timely notice nor an opportunity to meet and discuss before it advised its employees to go home and take the special holiday off, in violation of the CBA. PSCOA also asserted that, in 2004, the parties arbitrated a similar class action grievance involving Article 6 of the parties' CBA (2004 Case), and PSCOA admitted the decision in the 2004 Case into evidence. In the 2004 Case, DOC directed 10 PSCOA members to take a holiday on New Year's Day, instead of working their regularly scheduled shifts that day and earning additional compensation for doing so. PSCOA Br., App. B, at 3. In the 2004 Case, Arbitrator William W. Lowe (Arbitrator Lowe) determined that DOC implemented a schedule change under Article 6 of the CBA, but that DOC did not violate the CBA because it provided two weeks' notice and a meet-and-discuss opportunity as required by Article 6. *Id.* at 13-14. PSCOA maintained that, in this case, Arbitrator Kasher was bound by Arbitrator Lowe's prior decision and, thus, should conclude that DOC implemented a schedule change without proper notice in violation of the CBA.

In response, DOC asserted that by giving its employees the Juneteenth special holiday off, it was simply attempting to comply with Governor Wolf's declaration. DOC argues that even if it failed to comply with the notice requirements of Article 6, there was no adverse impact on any DOC employees. DOC argued that the employees who were sent home received their full pay for the day, plus a shift differential. DOC further asserted that employees who were given the day off on June 19, 2020, got one day off, while employees who worked that day received one day off at a future time pursuant to Article 9, Section 6 of the CBA.

5

Following the hearing and the parties' submission of post-hearing briefs, on March 15, 2021, Arbitrator Kasher issued his Award denying the grievance. Arbitrator Kasher concluded that DOC did not violate the CBA when it directed certain employees to stay home on June 19, 2020, to celebrate the Juneteenth special holiday.

As to whether instructing employees who were scheduled to work not to work on Juneteenth constituted a schedule change under Article 6 of the CBA, Arbitrator Kasher concluded:

> [DOC] argues that giving someone an extra day off with pay does not constitute a schedule change. This Arbitrator disagrees. Schedules are posted well in advance so that employees know when they are required to work and can establish some continuity in their personal lives. To accomplish this[,] the parties drafted language in Article 6 [of the CBA] [that] requires [DOC], absent emergencies or new programs, to post changes to schedules two weeks in advance, as well as to meet and discuss any proposed schedule changes with [PSCOA]. The parties also agreed that employees who are scheduled to work on a special holiday are entitled to an additional benefit – time off with pay for all hours worked up to the number of hours in the employee's normal work shift. By instructing an employee who is scheduled to work, not to work, [DOC] is changing that employee's schedule and depriving that employee of receiving a bargained for benefit.

Arb. Award, 3/15/21, at 11.

Arbitrator Kasher further determined that this case is distinguishable from the 2004 Case in a key respect:

> The facts here are materially different than those before Arbitrator Lowe [in the 2004 Case]. Here, *it would have been impossible for [DOC] to provide two weeks' notice as the special holiday was announced [one] day in advance of the actual holiday.* This Arbitrator agrees with Arbitrator Lowe's analysis that the intent of the [h]ours of [w]ork [provision in Article 6 of the CBA] is to "regularize employment

6

*to the degree possible*" (emphasis added). In th[e] grievance [before Arbitrator Lowe], the change in schedule was declared more than [two] weeks in advance and thus it was possible for [DOC] to comply with the requirements of Article 6 [of the CBA].

Here, *there was no reasonable opportunity to post a notice and meet and discuss this change with [PSCOA]. More importantly, there is no evidence before this Arbitrator that [DOC] was manipulating schedules in an attempt to avoid providing a benefit. In fact, it appears the opposite is true – [DOC], with short notice, was attempting to provide a day off with pay for as many employees as possible.* This Arbitrator credits the testimony of [Melissa] Kracher, [DOC's Chief of Labor Relations,] that the [state correctional] institutions, in transitioning to a holiday schedule, no longer needed a number of employees who had been scheduled to work; and that [DOC] wanted to allow as many employees as possible to participate in the [Juneteenth] holiday.

*Id.* at 12-13 (emphasis added).

Therefore, Arbitrator Kasher concluded that DOC "did not violate the [CBA] when it instructed some employees to stay home to celebrate the Juneteenth holiday" on June 19, 2020, and denied the grievance. *Id.* at 13. PSCOA now petitions for review of that decision.

## Analysis

### 1. Essence Test

First, PSCOA argues that the Award is not rationally derived from the CBA because Arbitrator Kasher expanded the CBA's terms and conditions by excusing DOC's failure to comply with the notice and meet-and-discuss provisions of Article 6. PSCOA also argues that Arbitrator Kasher's Award impermissibly created an "impossibility" exception that was neither contemplated nor bargained for by the parties in the CBA. We disagree with both contentions.

7

This Court applies the highly deferential "essence test" when reviewing a grievance arbitration award issued under PERA. *Millcreek Twp. Sch. Dist. v. Millcreek Twp. Educ. Support Pers. Ass'n*, 210 A.3d 993, 996 (Pa. 2019). Under the essence test, a reviewing court must determine: (1) whether the issue before the arbitrator is encompassed by the parties' CBA; and (2) whether the arbitrator's interpretation is rationally derived from the parties' CBA. *Id.* "[S]ubject to a narrow exception for awards that violate a dominant public policy, proper application of the essence test *prohibits a court from vacating an arbitrator's award unless 'the award indisputably and genuinely is without foundation in, or fails to logically flow from, the [CBA].'" Id.* (citation omitted) (emphasis added).[5] In other words, "[t]he test is not whether the reviewing court agrees with the arbitrator's interpretation of the [CBA], but *whether the arbitrator's interpretation and application of the agreement can be reconciled with the language of the agreement*." *Dep't of Corr. v. Pa. State Corr. Officers Ass'n*, 38 A.3d 975, 980 (Pa. Cmwlth. 2011) (emphasis added).

Article 6, Section 5 of the parties' CBA expressly provides that "*[e]xcept for emergencies*, [schedule] changes will be posted two weeks in advance." R.R. at 6a (emphasis added). That provision also states that "[w]here changes are to be made by the Employer *for other than emergency reasons*, . . . the Employer agrees to meet and discuss with [PSCOA] prior to the implementation of such changes or schedules." *Id.* (emphasis added). Notably, neither "emergencies" nor "emergency reasons" is defined in the parties' CBA.

It is well settled that the "[i]nterpretation of contractual terms is a task for the grievance arbitrator and is entitled to a high degree of deference." *Millcreek Twp.,*

---

[5] Neither party argues that the public policy exception to the essence test applies in this case, nor did they argue that exception before Arbitrator Kasher.

8

210 A.3d at 1004. To determine whether an arbitration award is rationally derived from a CBA, the Supreme Court has offered the following guidance:

> [W]e emphasize that the parties to a CBA have agreed to allow the arbitrator to give meaning to their agreement and fashion appropriate remedies for "unforeseeable contingencies." The words of the CBA are not "the exclusive source of rights and duties." The arbitrator is authorized to make findings of fact to inform his [or her] interpretation of the CBA. . . .
>
> Accordingly, even though an arbitrator is not permitted to ignore the CBA's plain language in fashioning an award, *the arbitrator's understanding of the plain language must prevail.*

*Id.* at 1006 (internal citations omitted) (emphasis added).

Here, Arbitrator Kasher reviewed the relevant CBA provisions, particularly Article 6, Section 5, and concluded that DOC had "no reasonable opportunity to post a notice or to meet and discuss th[e Juneteenth schedule] change with" PSCOA. Arb. Award, 3/15/21, at 12. As DOC asserts in its appellate brief, the parties' inclusion of the emergency language in Article 6, Section 5 indicates that, in crafting the CBA, the parties contemplated that unforeseen circumstances may arise when DOC will be unable to provide two weeks' notice or to meet and discuss a proposed schedule change with PSCOA for various reasons. *See* DOC Br. at 11-12. In this case, Governor Wolf directed DOC, less than 24 hours before the start of the Juneteenth special holiday, to give its employees time off for the holiday and encouraged employees to "celebrate th[e] day safely with the people closest to you or in service of your community." R.R. at 27a. Although Arbitrator Kasher did not specifically use the term "emergency" in reaching his decision, it is evident that he considered and applied the emergency language in Article 6, Section 5 when he concluded that DOC could not have possibly complied with the notice requirements under the

9

circumstances. *See* Arb. Award, 3/15/21, at 11 ("[T]he parties drafted language in Article 6 which requires [DOC], absent emergencies or new programs, to post changes to schedules two weeks in advance[] . . . ."); *id.* at 10-11 (quoting Article 6, Section 5 of the CBA).[6] Considering the "high degree of deference" we must give to an arbitrator's interpretation of a contract, *Millcreek Twp.*, 210 A.3d at 1006, we conclude that the Award logically flows from Arbitrator Kasher's interpretation of the language in Article 6, Section 5 of the CBA.

We also reject PSCOA's contention that Arbitrator Kasher "created new contractual language that provides an exception" to the CBA "where one did not previously exist." PSCOA Br. at 8. The emergency language was not created by Arbitrator Kasher; it is expressly included in the parties' contract. *See* R.R. at 6a. PSCOA further asserts that Arbitrator Kasher impermissibly wrote "a quasi-impossibility exception into the contract" when he found that "'it would have been impossible for [DOC] to provide two weeks' notice[,] as the special holiday was announced [one] day in advance of the actual holiday.'" PSCOA Br. at 12 (quoting the Award). Again, Arbitrator Kasher did not create an "impossibility" exception; he merely interpreted the entirety of Article 6, Section 5 and determined that the language therein contemplates situations where compliance with the notice requirements would be impossible due to unforeseen circumstances, as in this case. *See Millcreek Twp.*, 210 A.3d at 1004 (recognizing that "the parties to a CBA have agreed to allow the arbitrator to give meaning to their agreement and fashion appropriate remedies for 'unforeseeable contingencies'"). We conclude that

---

[6] Arbitrator Kasher further found "no evidence . . . that [DOC] was manipulating schedules in an attempt to avoid providing [its employees] a benefit. In fact, it appears the opposite is true – [DOC], with short notice, was attempting to provide a day off with pay for as many employees as possible." Arb. Award, 3/15/21, at 12.

Arbitrator Kasher's interpretation and application of the parties' CBA can easily be reconciled with the contract's express language. *See Dep't of Corr.*, 38 A.3d at 980. Therefore, we conclude that the Award is rationally derived from the CBA.

## 2. Conflict with 2004 Case

Finally, PSCOA contends that the Award does not draw its essence from the parties' CBA because it conflicts with Arbitrator Lowe's award in the 2004 Case, which involved the same contractual provision and the same parties. We disagree.

Our courts have recognized that an arbitration award violates the essence test if it fails to follow prior arbitration decisions involving the same parties and same contract provisions. *Sch. Dist. of Phila. v. Phila. Fed'n of Teachers, Local 3*, 651 A.2d 1152, 1155-56 (Pa. 1994). "[W]hen an arbitrator is faced with a decision cited in a case involving the same parties, the same clause(s) and the same basic issue(s)[,] . . . heavy weight [must] be afforded to the earlier decision." *Id.*; *see Bradford Area Sch. Dist. v. Bradford Area Educ. Ass'n*, 663 A.2d 862, 864 n.1 (Pa. Cmwlth. 1995) ("[A]n arbitrator must accept a prior arbitration decision interpreting an identical contract provision in a subsequent arbitration involving the same parties.").

In the 2004 Case, 10 PSCOA members were scheduled to work on January 1, 2003, which was a regular holiday.[7] PSCOA Br., App. B, at 3. On December 18, 2002, DOC notified those employees by memorandum that they were no longer scheduled to work the New Year's Day holiday. *Id.* The employees received eight hours of pay for the holiday but did not receive the time-and-a-half pay they would have received had they worked, nor the $1.00-per-hour shift differential. *Id.* Before

---

[7] Management Directive 505.7 identifies New Year's Day as a "paid holiday," for which permanent, full-time employees receive leave with compensation. R.R. at 39a. Ms. Kracher testified at the arbitration hearing that on a "special holiday[,] employees who work receive their regular rate of pay, whereas on a regular holiday, employees receive premium pay." Arb. Award, 3/15/21, at 3.

11

implementing the schedule change, DOC met and discussed the need to adjust staffing for the New Year's Day holiday with PSCOA. *Id.* Arbitrator Lowe determined that requiring employees to take a holiday on a day when they were previously scheduled to work constituted a schedule change triggering the notice provisions of Article 6 of the CBA. *Id.* at 13-14. Arbitrator Lowe also concluded that DOC did not violate the terms of the CBA because it provided the requisite two weeks' notice and a meet-and-discuss opportunity in advance of the holiday. *Id.* at 14.

We agree with Arbitrator Kasher that the 2004 Case is factually distinguishable from this case. The 2004 Case involved a regular holiday, not a special holiday declared by the Governor. Because the 2004 Case involved a regularly scheduled holiday, DOC was able to provide two weeks' notice and to hold a meet-and-discuss opportunity with PSCOA. As a result, Arbitrator Lowe did not need to interpret or apply the emergency language in Article 6. Indeed, Arbitrator Lowe ostensibly acknowledged that situations could arise that would prevent DOC from complying with the notice requirements, stating that "the intent of the [h]ours of [w]ork article in the [CBA] is to regularize employment *to the degree possible*." PSCOA Br., App. B, at 13 (emphasis added). Here, however, the Governor's declaration of the Juneteenth special holiday *one day before the holiday* was unanticipated and prevented DOC from providing the requisite notice to PSCOA in advance of the holiday.

Consistent with the 2004 Case, Arbitrator Kasher determined that requiring employees to take a holiday on a day when they were previously scheduled to work constituted a schedule change under the CBA. Arb. Award, 3/15/21, at 11. With regard to notice, however, Arbitrator Kasher concluded that DOC did not violate the

12

terms of the CBA because it was impossible for DOC to satisfy Article 6's notice requirements, since Governor Wolf declared the Juneteenth special holiday *less than 24 hours* before the start of the holiday. This circumstance was not present in the 2004 Case. Therefore, we conclude that the Award in this case does not conflict with the award in the 2004 Case.

## Conclusion

Arbitrator Kasher considered the unique circumstances presented by Governor Wolf's unanticipated declaration of the Juneteenth special holiday, interpreted the relevant provisions of the parties' CBA, and denied the grievance. Based on our review of the record and Arbitrator Kasher's decision, we cannot conclude that the Award in this case "indisputably and genuinely is without foundation in, or fails to logically flow from, the [parties'] CBA." *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 939 A.2d 855, 863 (Pa. 2007). Accordingly, we affirm the Award.

_____
ELLEN CEISLER, Judge

President Judge Brobson and Judge Crompton did not participate in the decision of this case.

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Corrections : 
Officers Association, : 
                 Petitioner : 
                 : 
                 : 
        v. : No. 380 C.D. 2021
                 : 
Commonwealth of Pennsylvania, : 
Department of Corrections, : 
                 Respondent : 

# **O R D E R**

AND NOW, this 15th day of October, 2021, the Grievance Arbitration Award, dated March 15, 2021, is hereby AFFIRMED.

                                 _____
                                 ELLEN CEISLER, Judge