618 A.2d 1202

## CRAWFORD CENTRAL SCHOOL DISTRICT

v.

## PENNSYLVANIA LABOR RELATIONS BOARD
and Crawford Central Education Association.

### Appeal of PENNSYLVANIA LABOR RELATIONS BOARD, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 23, 1992.

Decided Dec. 18, 1992.

278

James L. Crawford, for appellant.

Emil M. Spadafore, Jr. and John J. Barber, for appellee.

Before CRAIG, President Judge, McGINLEY, Judge, and NARICK, Senior Judge.

NARICK, Senior Judge.

The Pennsylvania Labor Relations Board (PLRB) and the Crawford Central Education Association (Union), Intervenor, appeal from the order of the Court of Common Pleas of Crawford County that reversed the PLRB's order, which held that the Crawford Central School District (District) had com-

mitted an unfair labor practice for failure to comply with an arbitration award. We reverse.

From August 29, 1986, until August 28, 1989, the Union and the District were parties to a collective bargaining agreement (CBA). Article VI, Section (B)(5) of the CBA states that: Secondary teachers shall not be required to teach more than three (3) subject areas or no more than a total of three (3) teaching preparations. This provision will not be applicable to minicourses, modular scheduling and other programs when the teacher(s) to be affected have been consulted and agree to the implementation of such program.

Three teachers from the District filed grievances, requesting compensation for the 1988–89 school year for all preparation periods (preps) [1] in excess of the three provided for in the CBA. These grievances were consolidated and the Union sought arbitration.

After hearings, the arbitrator filed his decision, holding that the three teachers were to be compensated for their extra preps for the 1988–89 school year. The arbitrator also issued a prospective order that required the District to cease and desist from scheduling teachers to more than three preps without the consent of the individual teacher. The arbitrator retained jurisdiction over the implementation of the monetary relief awarded.[2]

1. A teaching prep is any class for which a teacher must prepare a separate and distinct lesson plan.

2. The arbitrator stated in the Interim Award that:
   The Grievances are granted. The Grievants are to be compensated for their extra teaching load as calculated in Article VI(B)(3) for the 1988–89 school year. The District must Cease and Desist from scheduling teachers to more than three teaching preparations without the consent of the individual teacher.
   The Arbitrator retains jurisdiction over the implementation of the monetary remedy and relief awarded to Grievants. Either party may Petition the Arbitrator for a Final Award specifying the exact dollar amount due each Grievant. (164a).
   In addition, the decision contains the following pertinent language: This decision and award is therefore binding only as it applies to the parties in the instant case *and* to incidents which arise prospectively. The Award should not be applied to other teachers who fulfilled their 1988–89 school year schedule without filing grievances. (Emphasis added.) (164a).

Subsequently, the District and the Union held discussions concerning implementation of the arbitrator's award. The three grievants were paid for their extra preps for the 1988–89 school year, but numerous teachers including two of the grievants were scheduled for extra preps for the following school year, 1989–90. In a letter, dated January 22, 1990, the District asked the arbitrator to issue a final interpretation of the award as it impacted the remuneration to teachers other than the three grievants. The District recognized that it had approximately thirty employees teaching more than three preps during the 1989–90 term.

On February 7, 1990, the arbitrator issued a remedial order setting forth the manner of payment for teachers who are assigned preps over those permitted under the CBA. The arbitrator stated: "Although this may create significant additional compensation and, therefore expense, for the District, the Agreement must be followed unless each individual teacher waives the three period maximum or the parties bargain a different provision." (167a). No appeals were taken.

The District paid no compensation to teachers with extra preps during the 1989–90 school year. In a letter, dated August 27, 1990, the District requested a response in writing from the fourteen teachers that were assigned additional preps for the 1990–91 school year. Five teachers indicated they would waive the additional compensation. The other nine teachers requested payment. However, the District has still made no payments to any teachers that have asked for the extra compensation for the extra preps.

On April 9, 1990, the Union filed an unfair labor practice charge with the PLRB, alleging that the District violated Section 1201(a)(8) of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.1201(a)(8), by failing to comply with the provisions of a binding arbitration award.

After hearing, the examiner issued a proposed decision and order, holding that the District committed an unfair labor practice by failing to comply with the arbitration award. The examiner ordered the District to cease and desist from sched-

uling teachers to more than the three preps beginning with the 1991–92 school year. He also ordered the District to compensate teachers who taught extra preps without their consent during the 1989–90 and 1990–91 school years.

The District filed exceptions which the PLRB dismissed. However, the examiner's order was modified with respect to the District's ability to assign teachers to extra preps by allowing a teacher to expressly consent to the extra assignments.

The District appealed the PLRB's decision to the trial court, which after submission of briefs, oral argument and a review of the record, reversed. The trial court held that the District should not be held liable for failure to abide by the arbitrator's award, because the Union delayed in filing the unfair labor practice complaint and, therefore, laches must be applied. The trial court also found that the Union did not prove "anti-union animus," a factor it held was required to support an unfair labor practice violation.

The Union now appeals to this Court,[3] and raises the following issues: (1) whether the trial court erred as a matter of law in holding that laches barred the Union's unfair labor practice charge; (2) whether the trial court erred in holding that the Union, in alleging that the District failed to comply with the arbitration order, needed to prove that the District was motivated by anti-union animus or that it acted in willful disregard of the arbitration award; and (3) whether the PLRB's findings, concerning the District's failure to comply with the arbitrator's award, are based on substantial evidence.

**3.** Although the trial court conducted a review of the case, the PLRB is the finder of fact, and thus our review centers on its findings. *Midland Borough School District v. Pennsylvania Labor Relations Board,* 126 Pa.Commonwealth Ct. 537, 560 A.2d 303 (1989) *petition for allowance of appeal denied,* 525 Pa. 651, 581 A.2d 576 (1990). Our scope of review is narrow and is limited to a determination of whether the findings of the PLRB are supported by substantial evidence and whether the conclusions drawn from those facts are reasonable and not capricious, arbitrary or illegal. *Abington Transportation Association, PSSPA/PSEA v. Pennsylvania Labor Relations Board,* 131 Pa.Commonwealth Ct. 267, 570 A.2d 108 (1990).

■   The Union sets forth three reasons why the trial court's determination, that laches bars the Union's unfair labor practice charge, is erroneous.  They are that: (1) laches is an equitable doctrine, not assertable as a defense in an action at law or in an administrative proceeding, both of which are governed by applicable statutes of limitations; (2) laches is a factual determination to be made by the fact finder, the PLRB in this case, and not by the trial court in its role as an appellate court;  and (3) if laches is found to be applicable here, the findings by the trial court are contrary to the record evidence.

We agree with the Union's position.  In *Appeal of Churchill Area School District,* 30 Pa.Commonwealth Ct. 413, 415, n. 1, 374 A.2d 1000, 1002, n. 1 (1977), the Court stated that: [W]hile administrative discretion should be exercised in equitable fashion, the equitable doctrine of laches ... [is] not for application in administrative proceedings just as [it is] not for application in actions at law.

The applicable statute of limitations, found at Section 1505 of PERA, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.1505, provides for a four-month period in which a charge may be filed.  The trial court found that the Union waited seven months, from July 14, 1989, the date of the arbitrator's initial decision, before it filed its charge with the PLRB on April 9, 1990.  By making this determination, the trial court completely disregarded the District's request [4] for a

---

**4.**  The District's letter, dated January 22, 1990, states as follows:

This letter is to request final interpretation of the grievance award regarding extra preparations in the Crawford Central School District. The Crawford Central School District recognizes the compensation plan designed for Ms. Peters, Ms. Williams, and Mr. Cressley, but remuneration to other employees continues to be a significant question.

The School District currently has approximately 30 employees teaching more than three preparations.  The cost for extra preparations as calculated by Article VI(B)(3) is in excess of $60,000.  The question that needs to be answered is this.  Does a teacher receive double or triple the calculation in Article VI(B)(3) if the teacher has more than four preparations?  The cost may total $100,000 if all employees are paid for each preparation beyond three preparations according to Article VI(B)(3).

remedial order from the arbitrator. In the letter, the district acknowledged its responsibility to pay teachers who are assigned more than three preps and only questioned the method of calculation. It was subsequent to the arbitrator's remedial order, dated February 7, 1990, that the Union realized that the District would not comply with the arbitration award. Thus only two months passed since the occurrence of acts that gave rise to the Union's filing of the unfair labor practice charge.

▄▄▄ The trial court also disregarded the constraints of its scope of review, which is limited, as is ours. The question of laches is a factual determination. *Sprague v. Casey*, 520 Pa. 38, 550 A.2d 184 (1988). Since the PLRB is the fact finder, the trial court erred in making the laches determination. *Midland Borough*. In fact, we note that laches as an affirmative defense was never mentioned by the parties. Therefore, the trial court improperly raised the defense *sua sponte*.

▄▄▄ The Union next argues that the trial court erred in requiring proof of unlawful motive or anti-union animus on the District's part and that the violation of PERA must be willful. Under PERA, the complainant has the burden of proving the alleged charges. *State System of Higher Education v. Pennsylvania Labor Relations Board*, 107 Pa.Commonwealth Ct. 151, 528 A.2d 278 (1987).

> [W]hen a complainant in a charge of unfair labor practice alleges refusal to comply with the provisions of an arbitration award deemed binding, the Board must determine: 1) if the award exists; 2) if the appeal procedure available to the party under the rule has been exhausted; and then 3) whether the party has failed to comply with the provisions of the arbitrator's decision.

*Id.* at 157, 528 A.2d at 281.

There is no question that the award exists and that the correct appeal procedures were followed. The issue remaining is one of compliance and, as argued by the Union, there is no requirement of proof of anti-union animus or willful non-

compliance with the arbitrator's award. So long as the PLRB's interpretation of the arbitrator's award is supported by the record, not violative of constitutional rights or contrary to the law, it should be affirmed. *Id.* The trial court applied an improper standard of proof, when it held that the Union failed to establish anti-union animus or willful disregard of the arbitration award.

The Union's last argument concerns the third prong of the test articulated in *State System*. The Union argues that if the PLRB's findings that the District failed to comply with the arbitration award is based on substantial evidence, the trial court may reverse that decision only if the conclusion drawn from those facts is unreasonable. Our review of the record reveals that the PLRB's findings are based on substantial evidence. Furthermore, we hold that the PLRB's conclusion was not unreasonable nor was it capricious, arbitrary or illegal.

Accordingly, based on the above discussion, we reverse the trial court's order and reinstate the order of the PLRB.

### ORDER

AND NOW, this 18th day of December, 1992, the order of the Court of Common Pleas of Crawford County is hereby reversed and the order of the Pennsylvania Labor Relations Board is reinstated.