**PENNSYLVANIA TURNPIKE COMMISSION, Petitioner**

v.

**TEAMSTERS LOCAL UNION NO. 77, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 14, 2012.

Decided April 11, 2012.

Kelly S. Sullivan, Media, for petitioner.

Peter H. Demkovitz, Philadelphia, for respondent.

BEFORE: LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

The Pennsylvania Turnpike Commission (Commission) appeals from an arbitration award denying its grievance against Teamsters Local Union Number 77 (Union) as untimely pursuant to their collective bargaining agreement (CBA).[1] In the arbitration, the Commission sought indemnification for attorney fees it incurred in defending litigation filed by non-union employees challenging "fair share" deductions. Rather than decide the merits, the arbitrator found the Commission's claim procedurally defective. For the reasons that follow, we vacate and remand.

## Background

With respect to terms and conditions of employment, the Union is an exclusive representative for employees of the Commission under the CBA. Review of the unique circumstances leading to arbitration is crucial in this case.

In 2007, non-union Commission employees sued the Union and the Commission in the United States District Court for the Middle District of Pennsylvania challenging the collection of union dues for non-union members (Federal Court Action). In particular, the employees filed a civil rights action protesting the collection of fair share fees under Article 4 of the CBA.

Pursuant to the CBA, the Commission must deduct a fair share fee monthly from all employees who are not Union members. The CBA contains an indemnification clause in Article 4, Section 3, which provides:

> the Union shall indemnify and save the Commission harmless from any and all claims, suits, orders or judgments brought or issued against the Commission as a result of any action arising out of or resulting from implementing [the fair share provision].

Reproduced Record (R.R.) at 8a. The "fair share" provision of the CBA in Article 4 incorporates the Commission's duty as a public employer to deduct fair share fees from non-Union members. R.R. at 7a. This duty of collection is imposed on public employers by the Public Employee Fair Share Fee Law[2] (Fair Share Law).

The Commission filed a cross-claim against the Union seeking indemnification and attorney fees related to the Federal Court Action. The part of the cross-claim

---

1. Local Union No. 250 is also party to the collective bargaining agreement.

2. Act of June 2, 1993, P.L. 45, *as amended,* 43 P.S. §§ 1102.1–1102.7.

involving attorney fees is central to the current controversy.

The parties executed a settlement agreement resolving the Federal Court Action on **May 9, 2008** (Settlement Agreement). The Settlement Agreement required the *Union* to pay plaintiffs for their claims. The Commission was not required to make any payments to plaintiffs under the Settlement Agreement.

Paragraph 8 of the Settlement Agreement provides:

> Defendants [Commission and the Union] agree to resolve the issues raised in the [Commission's] Cross-claim against [the Union] by submitting the issue to arbitration *pursuant to the collective bargaining agreement* in force between the parties.

R.R. at 155a–156a (emphasis supplied). The Commission thus agreed to submit its cross-claim for attorney fees to arbitration "pursuant to" the CBA. *Id.*

On **September 19, 2009,** the Commission sought arbitration with the American Association for Arbitration (AAA). The Union objected, alleging the AAA lacked jurisdiction over the matter. The Union argued that such jurisdiction rested solely with the arbitrator designated by the CBA. In response, the AAA advised the parties it did not have jurisdiction, and it closed its file.

By letter dated **January 5, 2010,** the Commission filed a "Request for Grievance Arbitration Panel" with Pennsylvania's Bureau of Mediation in the Department of Labor and Industry. The Commission submitted its claim directly to arbitration, protesting the failure of the Union to indemnify the Commission for attorney fees incurred in the Federal Court Action. Pursuant to the CBA, the parties selected an arbitrator, John Skonier (Arbitrator), to decide the cross-claim.

The Arbitrator held a hearing on October 8, 2010, at which the parties submitted testimony and documentary evidence in support of their respective positions. The parties also submitted post-hearing briefs.

Procedurally, the Union contended that the matter was not arbitrable because the Commission, as the employer, could not file a "grievance" under the CBA. The Union argued a "grievance" may only be filed by an employee. Substantively, the Union asserted the Commission was not entitled to recover attorney fees because the indemnification clause of the CBA did not specify such fees or a duty to defend. In addition, the Union argued that since the Settlement Agreement did not require the Commission to make any payments, its duty to indemnify was not triggered.

On August 14, 2011, the Arbitrator determined that the Commission's claim was "procedurally defective." Arbitrator's Op. at 16. The Arbitrator analyzed whether the Commission submitted the grievance "pursuant to the CBA" based on the procedural history of the case. The Arbitrator interpreted Article 26 of the CBA regarding the timeframe for filing grievances as setting forth a 10 work-day limitation for submitting a grievance to arbitration. Article 26 provides:

> If the grievance is not satisfactorily resolved at Step 2, *the Union may appeal to arbitration* within ten (10) work days after a decision at Step 2 is rendered.

R.R. at 42a (emphasis added).

With regard to time limits, in addition to the 10 work days within which the Union may appeal a decision to arbitration, the CBA provides:

> Any grievance not timely presented, or timely processed thereafter shall not be considered a grievance under this agreement and shall not be arbitrable. *Any*

*of the above time frames can be extended by mutual agreement of the parties.* See Article 26, Section 1 (emphasis added), R.R. at 43a. The CBA further provides that "the Arbitrator shall have no power or authority to add to, subtract from or modify the provisions of this agreement in arriving at a decision of the issue(s) presented and shall confine his decision solely to the application and interpretation of this agreement." *Id.*

The Arbitrator determined that the matter was properly arbitrable because the parties agreed to his jurisdiction in the Settlement Agreement. Further, he explained the matter involves a dispute regarding interpretation of a provision of the CBA, that being the indemnification clause. Contrary to the Union's argument that only employees may use the grievance process, the CBA does not bar the Commission from filing a grievance regarding a dispute as to the CBA's terms.

Deeming the matter substantively arbitrable in his analysis, the Arbitrator reasoned the Commission did not submit its grievance in accordance with the terms of the CBA. The Arbitrator noted the Commission did not seek arbitration until 18 months after executing the Settlement Agreement, well beyond the timeframes set forth in the CBA. Because the parties' agreed to arbitrate the claim "pursuant to" the CBA, the Arbitrator concluded the Commission should have submitted the issue to arbitration within 10 work days of executing the Settlement Agreement. Yet, the Commission did not make any demand for arbitration until September 2009. The Arbitrator also noted the Commission did not process a grievance pursuant to Steps 1 and 2 of the CBA.

As a result of this procedural defect, the Arbitrator did not decide the merits of the cross-claim before him. The Arbitrator entered the following award:

> As the Commonwealth did not timely file its demand for arbitration within the contractual time limits, the matter is not found to be arbitrable and the grievance is denied.

(Award). See Arbitrator's Op. at 16.

The Commission filed a petition for review from the arbitration, asserting the Award is not rationally derived from the CBA and violates public policy. The Commission asks this Court to vacate the award and remand with instructions to decide the merits of its cross-claim. Failure to do so, the Commission argues, renders its agreement to arbitrate illusory. The Union argues the Arbitrator correctly interpreted the CBA in finding the cross-claim time-barred.

## Discussion

We review the Award under the "essence test," articulated by our Supreme Court as follows:

> [T]he role for a court reviewing a challenge to a labor arbitration award under Act 195 is one of deference. We hold that in light of the many benefits of arbitration, there is a strong presumption that the Legislature and the parties intended for an arbitrator to be the judge of disputes under a collective bargaining agreement. That being the case, courts must accord great deference to the award of the arbitrator chosen by the parties. A fortiori, in the vast majority of cases, the decision of the arbitrator shall be final and binding upon the parties. However, there exists an exception to this finality doctrine. The arbitrator's award must draw its essence from the collective bargaining agreement. Pursuant to the essence test as stated today, a reviewing court will conduct a two-prong analysis. *First, the court shall determine if the issue as properly defined is within the terms of*

*the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement.* That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*State System of Higher Educ. (Cheyney Univ.) v. State College Univ. Professional Ass'n (PSEA–NEA)*, 560 Pa. 135, 149–150, 743 A.2d 405, 413 (1999).

The Commission contends the Award must be vacated because the Arbitrator did not decide the merits of the claim. Failure to reach a decision on the merits, the Commission asserts, contradicts the public policies established in the Fair Share Law, Section 903 of the Public Employe Relations Act (PERA),[3] and the Uniform Arbitration Act (UAA).[4] The Commission also argues the Arbitrator's determination is not rationally derived from the CBA, which expressly imposes the 10–day timeframe solely on the *Union.*

The Union argues that the Arbitrator's determination is entitled to great deference on his interpretation of Article 26 of the CBA and its grievance procedure.

3. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.903.

4. 42 Pa.C.S. §§ 7301–7362.

5. The Union also argues the Commission's appeal is frivolous and seeks attorneys' fees pursuant to Pa. R.A.P. 2744. *See* Union's Br. at 11, n. 1.

6. As an initial matter, we note an arbitrator is not entitled to a great degree of deference when there is a dispute as to his jurisdiction. *See Midland Borough Sch. Dist. v. Midland*

The Union also advises that the Commission's failure to demand arbitration until more than 16 months after executing the Settlement Agreement is untimely.[5]

### 1. Issue Is within the Arbitrator's Jurisdiction

■ The parties do not dispute that the matter is properly within the Arbitrator's jurisdiction. The Commission and the Union explain that they agreed to submit the cross-claim to arbitration conducted "pursuant to" the CBA. Both parties also acknowledge that the CBA contains an indemnification clause in Article 4 requiring the Union to indemnify the Commission relative to claims for deduction of fair share fees.

The Arbitrator concluded the cross-claim/indemnity was substantively arbitrable both under the Settlement Agreement and under the CBA. *See* Arbitrator's Op. at 13, 14. The Arbitrator specifically noted "[t]here is no language in the [CBA] that bars the Commission from utilizing the contractual grievance process." Arbitrator's Op. at 14.

■ We first consider whether the issue is embraced by the CBA and thus subject to the arbitrator's jurisdiction. *Cheyney Univ.*[6] In assessing an arbitrator's jurisdiction, we look to whether the arbitrator has the power to decide the issue that is the subject of the dispute.

*Educ. Ass'n, (PSEA),* 532 Pa. 530, 616 A.2d 633 (1992) (noting that whether an arbitrator has the power to implement an award beyond expiration of the collective bargaining agreement is a question of jurisdiction, so his decision is not entitled to the same deference traditionally extended to his interpretation of a contract). However, in the present case, the parties agreed to arbitrate the cross-claim pursuant to the CBA, and nothing precludes the Arbitrator's jurisdiction here.

*Bensalem Twp. v. Bensalem Twp. Police Benevolent Ass'n,* 803 A.2d 239 (Pa. Cmwlth.2002). The subject matter submitted to the Arbitrator here is indemnification for fair share claims. As the dispute involves interpretation of the indemnification clause in Article 4 of the CBA, the subject matter is properly decided by the CBA-designated arbitrator.

Because the Arbitrator had proper jurisdiction over the Commission's cross-claim for indemnification of attorney fees, we conclude the matter is arbitrable and satisfies part one of the essence test.

### 2. Award Is Not Rationally Derived from CBA

■ The parties disagree over whether the Arbitrator's interpretation of the CBA, and resulting award, is rationally derived from the CBA.

The Arbitrator construed Article 26 of the CBA, which provides, "If the grievance is not satisfactorily resolved at Step 2, the Union *may appeal to arbitration within ten (10) work days after a decision at Step 2 is rendered.*" Arbitrator's Op. at 15 (emphasis in original). The Arbitrator recognized the parties were able to agree to extend the timeframes of the CBA and chose not to do so. The Arbitrator determined that the 10 work-day timeframe applied to the Commission as it was the only timeframe set forth. The 10–day limit, as construed by the Arbitrator, was to be calculated from the date the parties entered the Settlement Agreement, May 9, 2008. Yet, the Commission did not make an arbitration demand for more than 16 months, and did not submit to arbitration "pursuant to" the CBA for 18 months. Due to the Commission's delay, the Arbitrator concluded there was a procedural defect, and he made no findings on the merits. Arbitrator's Op. at 16.

The Commission argues the Arbitrator erred in applying the 10–day timeframe, which by its clear terms applies solely *to the Union.* The Commission also asserts the Arbitrator committed legal error in failing to enforce the plain language of Article 4 of the CBA.

The Union argues that the Arbitrator is entitled to great deference in his interpretation of the CBA, finding the Commission's claim untimely, and thus procedurally inarbitrable. The Union contends that merely because this Court may differ in its interpretation of the CBA does not justify vacating the Award. The Union asserts that procedural issues, like timeliness of an arbitration demand, are not for this Court to second-guess. The Union notes courts must avoid reviewing the merits of the underlying issue and cannot disturb facts supported by the evidence.

■ We acknowledge that judicial review of arbitration awards is limited, and a reviewing court owes great deference to an award. *Dep't of Corr. v. Pennsylvania State Corr. Officers Ass'n,* 923 A.2d 1212 (Pa.Cmwlth.2007). An arbitration award will not be vacated unless its essence fails to flow from the CBA.

■ Under the "essence test," the award must be upheld if: (1) the issue as properly defined is within the terms of the collective bargaining agreement; and (2) the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. *Cheyney Univ.* Having determined the substantive issue is properly within the terms of the CBA, we now look to the Arbitrator's interpretation of the relevant terms and analysis to assess whether his interpretation can be rationally derived from the CBA.

■ An arbitrator's award must be respected if it represents a reasonable interpretation of the agreement between the

parties. *City of Phila. v. Fraternal Order of Police, Lodge No. 5*, 720 A.2d 811 (Pa. Cmwlth.1998). However, "a court may vacate an arbitration award if the . . . interpretation of the agreement was 'totally unsupported by principles of contract construction'" or if it is manifestly unreasonable. *Century Indem. Co. v. Fencourt Reinsurance Co., Ltd.*, 640 F.Supp.2d 626, 628 (E.D.Pa.2009) (citing *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1295 (3d Cir.1996)); *see also Delaware Cnty. v. Del. Cnty. Prison Employees Indep. Union*, 552 Pa. 184, 713 A.2d 1135 (1998) (vacating arbitration award for conflict with plain language of the agreement); *Dep't of Corr. v. Pa. State Corr. Officers Ass'n*, 38 A.3d 975 (Pa.Cmwlth. 2011) (vacating arbitration award as contrary to the agreement). An arbitrator's decision is manifestly unreasonable if it contradicts the plain language of the CBA. *Id.*

In this case, the Arbitrator's interpretation is not rationally derived from the essence of the CBA and cannot be reconciled with its plain language. The provision provides that "the **Union** may appeal to arbitration within ten (10) work days after a decision at Step 2 is rendered." Article 26, Section 1 (emphasis added). Here, the parties agreed to arbitrate, but they took none of the antecedent steps in the Grievance Procedure. Thus, it is unclear what timeframes govern.

Further complicating the matter, Article 26, titled "Grievance Procedure," contemplates grievances as filed by employees, not by employers like the Commission. Under the procedure, an employee and steward over the employee shall discuss a grievance within five work days of the grievance arising. In the event the grievance cannot be resolved with an employee's immediate supervisor, the aggrieved employee proceeds to "Step 1."

In Step 1, an aggrieved employee files an appeal to the Chief Operating Officer. The provision outlines short timeframes within which the Chief Operating Officer, or designee, must render a decision. The *Union* is then to proceed to Step 2.

In Step 2, the Union may submit a written appeal to the Director of Human Resources. The provision contains short timeframes within which the Director of Human Resources, or designee, must issue a decision. It is from the rendering of this Step 2 decision that the **Union** "may appeal to arbitration." *Id.*

Clearly, the timeframes as set forth in the Grievance Procedure are wholly inapplicable to the present case. Further, the Arbitrator does not explain why he concluded that the Commission's grievance was subject to the 10–day timeframe even though Steps 1 and 2 never occurred, and thus could not trigger Step 3 for appeals to arbitration. The Arbitrator states only "the parties agreed that the Commission could submit the issue directly to arbitration." Arbitrator's Op. at 15. In addition, the plain language of the CBA provides that the 10 work-day limitation applies solely to the Union on appeal from the Step 2 decision. Accordingly, the Arbitrator's interpretation of Article 26 is arbitrary and not consistent with established principles of contract construction.

Unlike the majority of cases arising from a CBA, this case does not involve a dispute between the union and employer over terms or conditions of employment. Rather, the dispute involves deduction of fair share fees from payroll of non-union members and places the employer in the position of submitting the case to arbitration. For that reason, much of the case law cannot be reconciled with these unique facts.

Moreover, the Award is not based solely on the Arbitrator's construction of the CBA. Instead, it is the Arbitrator's interpretation of the phrase "pursuant to the CBA" that is most at issue. That phrase is not in the CBA; rather, the phrase is in the Settlement Agreement.

Although an arbitrator is generally entitled to deference on procedural decisions, these are procedural issues that implicate the process under a CBA, not, as here, contractual arbitration arising from a different source. *See, e.g., Sch. Dist. of the City of Duquesne v. Duquesne Educ. Ass'n,* 475 Pa. 279, 380 A.2d 353 (1977). None of the cases that the Union cites support its argument that the Arbitrator is entitled to deference in this context. *But see Pa. Turnpike Comm'n v. Teamsters Local Union No. 250,* 948 A.2d 196 (Pa. Cmwlth.2008) (agreeing with arbitrator's determination that Commission's failure to timely file response did not render grievance inarbitrable for procedural reasons, and permitting Union to unilaterally proceed to arbitration on the merits of the grievance).

The Arbitrator's decision in this case intertwines the CBA language with the parties' agreement to arbitrate in the Settlement Agreement, necessitating careful disentanglement. There is nothing in the Arbitrator's decision to indicate he considered the Commission's claim untimely under the Settlement Agreement (as opposed to the 10–day timeframe set forth in the

CBA for traditional grievances). It is possible the parties intended to have the arbitration proceed to arbitration without contemplating adherence to pre-arbitration provisions, such as timeliness of making a demand.

Based on the foregoing, the Arbitrator's Award is not rationally derived from the CBA. The Arbitrator did not analyze the parties' intent in agreeing to arbitrate the cross-claim pursuant to the CBA, and presumed the timeframes in the Grievance Procedure applied despite non-occurrence of the triggering preconditions. Moreover, there is no language in any agreement from which to find the Commission time-barred.[7]

Because the indemnification claim is properly before the Arbitrator pursuant to both the CBA and the Settlement Agreement, we decline to serve as super-arbitrators; therefore, we do not render a decision on the merits.[8] Additionally, we do not view the Commission's appeal frivolous. Instead, for the reasons discussed above, we discern merit in the appeal. Accordingly, we decline the Union's invitation to impose attorney fees.

The Commission also claims the Award is contrary to the public policies embedded in PERA, the Fair Share Law and the UAA. Given our disposition of the essence test issue, we need not address the Commission's arguments asserting this limited public policy exception. *Westmoreland Intermed. Unit # 7 v. Classroom Assis-*

---

**7.** While the Arbitrator could have considered the Union's argument based on laches, he did not do so. Because laches is a factual determination, it should be left to the Arbitrator as fact-finder. *Crawford Cent. Sch. Dist. v. Pa. Labor Relations Bd.,* 152 Pa.Cmwlth. 277, 618 A.2d 1202 (1992).

**8.** With regard to the substantive interpretation of the indemnity clause, the Union takes the position that the CBA provides for indemnification without a "duty to defend," and

hence does not provide for recovering attorneys' fees. In support, the Union cites *State Farm Fire & Cas. Co. v. Honeywell Int'l, Inc.,* No. 3:03CV1741, 2005 WL 2020330 (M.D.Pa. Aug. 19, 2005), considered by the Arbitrator. In *State Farm,* the court found the language of the indemnity clause unambiguous in that it did not refer to any fees, and noted that the duty to defend is narrow within the indemnity context.

*tants Educ. Support Personnel Ass'n,* 595 Pa. 648, 939 A.2d 855 (2007) (holding to qualify for the sole exception to the essence test, public policy must be well-defined, dominant, and easily referenced in legal precedent).

In sum, the Arbitrator's decision is contrary to the plain meaning of the CBA and construes the agreement to arbitrate without implementing it. We therefore vacate the Award for failing the second step of the essence test, and we remand to the Arbitrator to construe the terms of both the CBA and the Settlement Agreement consistent with the intent of the parties. *See, e.g., Dep't of Corr. v. Pa. State Corr. Officers Ass'n,* 38 A.3d 975 (Pa.Cmwlth. 2011). We further instruct the Arbitrator to consider the laches defense and to consider both parties' positions regarding attorney fees as part of the agreement to indemnify.

### ORDER

**AND NOW,** this 11th day of April, 2012, the Arbitrator's decision and award is **VACATED** and **REMANDED** with instructions to render a decision consistent with this opinion.

Jurisdiction relinquished.