# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rose Tree Media School District     :
    :
          v.     :    No. 70 C.D. 2016
    :    Argued: February 7, 2017
Rose Tree Media Secretaries and     :
Educational Support Personnel     :
Association-ESPA, PSEA-NEA,     :
               Appellant     :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge


**OPINION BY JUDGE BROBSON**         **FILED: March 13, 2017**


Rose Tree Media Secretaries and Educational Support Personnel Association-ESPA, PSEA-NEA (Local Association) appeals from an order of the Court of Common Pleas of Delaware County (trial court), vacating an Arbitrator's Award (Award).[1] For the reasons discussed below, we affirm.

## I. BACKGROUND

Following the discharge of David Hay (Grievant) by Rose Tree Media School District (School District), the Local Association filed a grievance pursuant to the parties' collective bargaining agreement, which led to arbitration. The Arbitrator made the following findings of fact, and we are bound to accept them on

---

[1] The Pennsylvania State Education Association (State Association) filed an amicus curiae brief pursuant to Pa. R.A.P. 531.

appeal.[2]  Grievant worked as a "Support Staff II" employee at Penncrest High School, where he was assigned to assist an individual special education student (Student).  Grievant's job responsibilities included accompanying Student to classes, monitoring him in the classroom, assisting him with assignments, and keeping him on task.  Prior to the incidents giving rise to this case, Grievant had no record of discipline.

Three incidents involving Student's adapted English teacher (Teacher) eventually led to Grievant's discharge.  First, starting in November 2012, Grievant stopped bringing Student to his adapted English class.  Instead, Grievant arrived to Teacher's classroom several minutes early, without Student, and stayed several minutes past the allotted class time, after Student had left.  Teacher used the period before the English class to prepare and found Grievant's early arrival distracting.  On January 2, 2013, Teacher sent an email to Jodie Strevig (Strevig), who was acting as Special Education Coordinator at that time.  Teacher advised Strevig that Grievant was not accompanying Student to and from classes and that it was distracting her during her preparation.  Strevig notified Assistant Principal William Dougherty (Dougherty), who told Strevig to tell Grievant to stay with his student.  Strevig spoke with Grievant and warned that continued failure to accompany Student to and from class could lead to him being "written up" or losing his job.  Strevig notified Teacher of her conversation with Grievant, and, for a short period of time, Grievant stopped arriving to Teacher's classroom early and leaving late.

---

[2] An arbitrator's findings of fact are not reviewable by an appellate court, and an appellate court may not second-guess his findings of fact.  *Coatesville Area Sch. Dist. v. Coatesville Area Teachers' Ass'n/Pa. State Educ. Ass'n*, 978 A.2d 413, 415 n.2 (Pa. Cmwlth. 2009), *appeal denied*, 989 A.2d 10 (Pa. 2010).

A few days later, Grievant renewed his behavior of failing to accompany Student. Teacher asked Grievant why he was not accompanying Student, and he responded that he was employing a technique called "fading," where he would increase Student's independence by allowing him to complete certain tasks by himself. Teacher later checked Student's Individualized Education Program (IEP), which did not mention the use of the fading technique. Teacher wrote Strevig another email on January 11, 2013, informing Strevig that Grievant was again failing to accompany Student. She wrote that Grievant's conduct was "really getting annoying and starting to creep [her] out." (Reproduced Record (R.R.) at 23a.) Strevig spoke with Grievant a second time, again warning him that his conduct could lead to his dismissal. Grievant again apologized to Strevig.

The very next day, however, Grievant again arrived to Teacher's classroom early, without Student. As a result, Teacher sent an email to Joshua Mattson (Mattson), the school psychologist and part of the School District's administration. She described Grievant's conduct to Mattson and included the January 2, 2013 email to Strevig. Mattson spoke with Grievant and explained that he was to remain with Student from class to class. Following the discussion between Mattson and Grievant, Grievant ceased arriving to Teacher's classroom early and staying late. Regarding Grievant's usage of the fading technique, the Arbitrator found that a change in the IEP would be a precondition to using fading. Regarding the unwelcome classroom visits, the Arbitrator concluded: "I acknowledge [the School District Superintendent]'s view that these actions also constituted harassment and improper conduct under the Public School Code [Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101–27–2702], but I view 'neglect of duty' as the more compelling ground."

3

The second incident concerning Grievant and Teacher the parties have coined the "jogging incident." While the Arbitrator determined the exact date was not critical, at some point during the 2012 to 2013 school year, Grievant drove past Teacher while she was jogging. As the vehicle passed her, Teacher observed a male driver honking the horn and waving to her. The following day, when Grievant asked why Teacher did not acknowledge him as she was jogging, she responded that she could not discern who the driver was. Months later, another teacher, Lindsay Groy (Groy), overheard Grievant describe the experience with several students. Groy described that she heard Grievant state and repeat, "[Teacher] looked at me like I was the biggest piece of scum." (R.R. at 34a.) Groy commented to Grievant that a woman might feel uncomfortable in such a situation, to which Grievant replied that she was not supposed to hear his story. Groy then described this interaction with Grievant to Teacher, who was confused as to why Grievant was sharing the story with students months after it had occurred.

The third incident involving Teacher occurred after she instructed her class, including Student, to draw scenes from the book "Of Mice and Men," such as the scene where Lennie strangles Curley's wife. Teacher noticed that two of the drawings submitted by Student—the two that were supposed to depict the strangulation of Curley's wife—appeared to be drawn by a different person. Moreover, instead of Curley's wife, the woman depicted in the picture had pigtails, was holding a lacrosse stick, and had "PC LAX" written on her sleeve. Teacher

4

was a coach of the girl's lacrosse team and often wore her hair in pigtails.[3] Grievant asked Teacher if she recognized the woman that was being strangled in these drawings. She asked Grievant if the woman was a depiction of her, and Grievant answered affirmatively. Teacher became noticeably startled and disturbed, which prompted Grievant to say that he should not have done that. Teacher shared this interaction with Groy and confessed her discomfort. Notably, the Arbitrator conclusively found that the drawings were meant to depict Teacher.

On the advice of Groy, Teacher brought the drawings to Mattson who described Teacher as "distressed," "agitated," and "upset." (R.R. at 27a.) Mattson brought the drawings to Penncrest Principal Rick Gregg (Gregg), who then brought the drawings to Dougherty and Human Resources Director Anne Callahan (Callahan). Dougherty and Callahan spoke with Teacher the following day, about all three incidents. Callahan described Teacher as "upset" and "frightened." (*Id.*)

The next day, on May 22, 2013, Callahan and Dougherty met with Grievant and Patty Stokes (Stokes), a representative from the Local Association. At the meeting Callahan and Dougherty discussed with Grievant the three incidents involving Teacher. Grievant acknowledged that he drew the strangulation drawings. Grievant explained that he intended the drawings and sharing the jogging story with students to be funny and amusing rather than offensive. He also explained that his arriving to Teacher's class early and staying late was his attempt at using the fading technique. At the conclusion of the meeting, Callahan informed

---

[3] There is some inconsistency in the Arbitrator's decision, first describing the woman in this drawing as having *pigtails*, then later describing that same pictured woman as having a *ponytail*. Despite this inconsistency, we believe the Arbitrator intended to describe the woman in the drawing as wearing her hair in the same manner that Teacher wears her hair when she is coaching.

5

Grievant that he was suspended without pay pending an investigation of his conduct. In June, Callahan sent a memorandum to Grievant stating, "you have a reasonable assurance that your position will be available to you at the start of the 2013-2014 school year." (R.R. at 28a.) The Arbitrator additionally noted, "the record reveals that such letters are issued automatically to all ten-month employees." (R.R. at 39a.)

Grievant grieved his suspension, and on June 20, 2013, School District Superintendent James Wigo (Wigo) conducted a hearing, which the parties agreed would constitute a *Loudermill* hearing.[4] After the hearing, on July 3, 2013, Wigo advised Grievant in writing that he would recommend to the School Board that the Board terminate Grievant's employment. Grievant then contested Wigo's determination and a Committee of the School Board held a hearing on September 23, 2013. On October 24, 2013, the School Board approved the termination of Grievant's employment.[5] The Local Association amended the grievance to include Grievant's termination.

---

[4] A *Loudermill* hearing is a pre-termination hearing given to a public employee that is required by due process, as established in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

[5] After the July 3, 2013 hearing, but before the Board terminated Grievant's employment, a Magisterial District Court conducted a summary trial for criminal harassment. We include this information only by way of the Arbitrator's decision, which provided the following brief description:

> Ms. Callahan also brought the "Of Mice and Men" drawings to the State Police. On August 14, 2013[,] a summary trial was conducted in Magisterial District Court, where the grievant was charged with criminal harassment. At the conclusion of the hearing, the court granted grievant's motion for a directed verdict of acquittal. Counsel for the grievant there argued successfully that the issue was a labor relations, and not a criminal, matter. The court found the

**(Footnote continued on next page…)**

6

On behalf of Grievant, the Local Association referred the matter to arbitration. The Local Association and the School District agreed to an Arbitrator, who held two days of hearings. On October 24, 2014, the Arbitrator rendered a decision, concluding that the School District had just cause to suspend Grievant but did not have just cause to terminate Grievant. The Arbitrator determined that the unwelcome classroom visits constituted neglect of duty and that sharing the jogging story with students constituted improper conduct. Regarding the strangulation drawings, the Arbitrator stated:

> This incident with the drawings surely constitutes improper conduct. Whether it is intimidating brings to bear the element of intent, which I am not persuaded is present. Harassment, however, may well be present in that it need not require a showing of intent but merely of effect.

(R.R. at 38a.)

The Arbitrator also appears to have concluded that there was not just cause for termination because the School District failed to comply with due process requirements. The Arbitrator determined the School District needed to (1) memorialize notice to Grievant in writing, (2) meet with Grievant personally for each incident that required notice, and (3) investigate further by interviewing every party with involvement in the conflict. Specifically, the Arbitrator concluded that the School District should have interviewed Gregg, Mattson, and

---

**(continued…)**

evidence insufficient to meet the criminal burden of "proof beyond a reasonable doubt."

(R.R. at 28a.) There is no additional evidence regarding this summary trial for criminal harassment in the record before us.

7

Groy, as well as the recently retired author of Student's IEP, Cynthia Garvin Parks. Due to the failure of the School District to take such steps, the Arbitrator determined that the School District dismissed Grievant without just cause. Regarding his improper conduct, the Arbitrator stated:

> In addition, and also owing to the nature of the grievant's conduct, I direct the grievant to undergo a thorough reorientation with respect to his duties and responsibilities as a Support Staff II employee, as well as the conduct he is expected to maintain under the Public School Code. Such reorientation shall be completed before the grievant may resume his duties, including one-on-one contact with students. The grievant's reinstatement shall be deemed a last chance for him to demonstrate that he may continue as a resource for the School District.

(R.R. at 41a-42a.) The Arbitrator ordered Grievant reinstated without any backpay and without any loss in seniority.

The School District petitioned the trial court to vacate the Arbitrator's Award, and the trial court granted the petition to vacate. The trial court determined that the Award was not rationally derived from the CBA. The trial court explained that the Award required the School District to engage in additional procedures that were not included in the collective bargaining agreement. The trial court further determined that the Award violated public policy for safety in schools, citing our decision in *Shamokin Area School District v. American Federation of State, County, and Municipal Employees District Council 86*, 20 A.3d 579 (Pa. Cmwlth. 2011). This appeal followed.

## II. DISCUSSION

On appeal, the Local Association argues that under the essence test for review of arbitration awards, the Award should be reinstated. The Local Association stresses the highly deferential nature of the essence test and argues that

8

the Award is rationally derived from the CBA because the Award interpreted "just cause" for termination, which the CBA left undefined. The Local Association also argues that the Award does not violate any public policy because public policy favors the enforcement of arbitration awards. In response, the School District provides arguments that mirror the decision of the trial court. The School District argues that the additional process requirements were not rationally derived from the CBA. The School District also argues that the Award violates the public policies that protect against violence in schools and harassment in the workplace.[6]

## A. Essence Test

The essence test is an exceptionally deferential standard, because binding arbitration is a highly favored method of dispute resolution. *Northumberland Cnty. Comm'rs v. Am. Fed'n of State, Cnty. & Mun. Employees, AFL-CIO Local 2016, Council 86*, 71 A.3d 367, 374 (Pa. Cmwlth. 2013). An

---

[6] The State Association highlights the technical defects of the School District's petition to vacate the Award and contends that the Pennsylvania Labor Relations Board had exclusive jurisdiction over the Award pursuant to Section 1301 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.1301. In so doing, the State Association presents issues that were not raised by the Local Association, and Pennsylvania courts have long recognized that "amicus briefs cannot raise issues not set forth by the parties." *Banfield v. Cortés*, 110 A.3d 155, 172 n.14 (Pa. 2015). Even if we were to address the issues raised in the amicus brief, the State Association's arguments are unpersuasive. First, the School District's imprecise word choice—"Petitioner, Rose Tree Media School District, Appeal of Arbitration Decision" rather than "Petition to Vacate"—is inconsequential, because the title of a filing is not determinative and the trial court conducted the appropriate level of judicial review. Similarly, the State Association provided no support for the argument that the trial court lacked jurisdiction. We agree with the School District that Section 1301 of PERA only grants exclusive jurisdiction to the Pennsylvania Labor Relations Board for violations alleged under Section 1201 of PERA, 43 P.S. § 1101.1201, relating, in part, to unfair practices by public employers. The petition to vacate in this case was not based on any violation under Section 1201, and, therefore, the State Association's argument to the contrary is without merit.

9

arbitrator's award, however, must draw its essence from the collective bargaining agreement. *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999). Pursuant to the "essence test," an award should be upheld if (1) the issue as properly defined is within the terms of the collective bargaining agreement, and (2) the arbitrator's award can be rationally derived from the collective bargaining agreement. *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 939 A.2d 855, 863 (Pa. 2007). That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement. *Cheyney University*, 743 A.2d at 413.

Here, it is essentially undisputed by the parties that the first prong of the essence test is met—*i.e.*, the issue of whether Grievant was terminated for just cause is within the terms of the CBA.[7] As a result, we are left to determine only whether the Award can be rationally derived from the CBA.

The essence test does not require that we agree with an arbitrator's interpretation of the CBA. Rather, we look at whether that "interpretation and application of the agreement can be reconciled with the language of the agreement." *Dep't of Corr. v. Pa. State Corr. Officers Ass'n*, 38 A.3d 975, 980 (Pa. Cmwlth. 2011). The Supreme Court has previously described the difficulty in

---

[7] If a grievant raises an issue that is "arguably dealt with by the bargaining agreement then arbitration is required." *Ringgold Sch. Dist. v. Abramski*, 426 A.2d 707, 710 (Pa. Cmwlth. 1981). If a CBA embraces the issue raised, the arbitrator has jurisdiction over the dispute. *Pa. Tpk. Comm'n v. Teamsters Local Union No. 77*, 45 A.3d 1159, 1164-65 (Pa. Cmwlth. 2012).

ascertaining whether an arbitrator's interpretation of a just cause provision is rationally derived from a CBA:

> Although there is no exact definition, there is a general consensus as to some of the factors that may be considered in determining whether there is just cause for discharge or discipline, and in evaluating the penalty imposed. Arbitrators have considered such factors as, *inter alia*, whether there was any investigation; post-discharge misconduct and pre-discharge misconduct; a grievant's past employment record, length of service, post-discharge rehabilitation; and unequal treatment of other employees for similar misconduct.

*Office of Attorney Gen. v. Council 13, Am. Fed'n of State, Cnty. & Mun. Employees, AFL-CIO*, 844 A.2d 1217, 1224-25 (Pa. 2004).

Here, we conclude that the Arbitrator's determination that additional due process—*i.e.*, affording Grievant written notice and a meeting for each incident and interviewing additional individuals—was required in order for Grievant's termination of employment to be supported by just cause is not rationally derived from the CBA. Simply put, no provisions of the CBA required the School District to take such steps before termination of employment. The Local Association additionally does not point to treatment of any other teacher to suggest unequal treatment, unfairness, or any procedural inequality. The School District put Grievant on notice through the two warnings that Strevig gave to him. The Arbitrator found that Strevig warned Grievant that his behavior was unacceptable and that it may lead to discharge. As to whether the School District should have conducted more interviews, that is not a consideration as to whether there was *any* investigation. *See id.* Rather, it is an assessment of the depth of the investigation that indisputably took place. Interviewing every person involved prior to the initial suspension was unnecessary, because Grievant admitted to all

11

three of the incidents that led to his discharge. The Arbitrator's determination that due process, and thus just cause, was lacking, does not have any support from the factors Pennsylvania courts have previously considered. Rather, the Arbitrator's determination only stems from unsubstantiated claims that additional process was required.

The Arbitrator's private notion of due process does not adequately explain why additional process, including requirements exceeding what Pennsylvania courts have ever weighed in a similar context, was required for a finding of just cause. Curiously, while the Arbitrator noted that the School District presented "a compelling basis for finding that the grievant should, indeed, be dismissed," (R.R. at 39a), he also determined that it had just cause for the suspension but not the termination. The Arbitrator did so even though the he found that Grievant did in fact commit the acts for which he was discharged. An undefined just cause provision in a CBA does not serve as a blanket license for arbitrators to require more process than is due. Requiring written notice in each circumstance of improper behavior, followed by a personal meeting, as well as interviews of every person involved does not draw its essence from the CBA in this case. Because the Arbitrator's Award fails the second part of the essence test, the Award was properly vacated.

**B. Public Policy**

Because we have concluded that the Award is not rationally derived from the CBA in this instance, we do not need to address whether the public policy

12

exception may be applied to vacate the Award.[8]  We nevertheless note that although the School District raises public policy concerns relating to intimidation and harassment, the Arbitrator did not conclude that Grievant engaged in such behavior.  Rather, the Arbitrator found that Grievant's conduct constituted only neglect of duty and improper conduct.  Were we to analyze whether the Award violated public policy, we would be constrained to view Grievant's conduct based upon the findings of the Arbitrator.

## III.  CONCLUSION

The Arbitrator's Award did not draw its essence from the terms of the CBA and, therefore, fails under the essence test.  Accordingly, we affirm the order of the trial court.

_____
P. KEVIN BROBSON, Judge

_____

[8] An arbitration award that draws its essence from the collective bargaining agreement will nonetheless be set aside if it contravenes public policy. *City of Bradford v. Teamsters Local Union No. 110*, 25 A.3d 408, 413 (Pa. Cmwlth.), *appeal denied*, 32 A.3d 1279 (Pa. 2011).  An application of this public policy exception requires a three step analysis.  First, the nature of the conduct leading to the discipline must be identified. *Id.* at 414.  Second, we must determine if that conduct implicates a public policy which is "well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.*  Third, we must determine if the arbitrator's award poses an unacceptable risk that it will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty, given the particular circumstances at hand and the factual findings of the arbitrator. *Id.*  The determination of whether an arbitration award violated public policy is a question of law, subject to our plenary review. *Philadelphia Hous. Auth. v. Am. Fed'n of State, Cnty. & Mun. Employees, Dist. Council 33, Local 934*, 52 A.3d 1117, 1121 (Pa. 2012).

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Rose Tree Media School District :
:
:
v. : No. 70 C.D. 2016
:
Rose Tree Media Secretaries and :
Educational Support Personnel :
Association-ESPA, PSEA-NEA, :
Appellant :

# **O R D E R**

AND NOW, this 13th day of March, 2017, the order of the Court of Common Pleas of Delaware County is AFFIRMED.

_____
P. KEVIN BROBSON, Judge